RACLA GRYNBAL, Respondent, *v.* ABRAHAM GRYNBAL, Defendant, and ALBERT MANDEL et al., Appellants.

Second Department, July 25, 1969.

*Henry Wolfman* (*Lewis I. Wolf* and *Edward R. Koudelka, Jr.,* of counsel), for appellants.

*Spector & Meissner* (*Abraham Spector* of counsel), for respondent.

*Herman B. Gerringer* for New York State Trial Lawyers Assn., *amicus curiæ.*

SAMUEL RABIN, J.  Though somewhat obscured in procedural ramifications, the emerging substantive question on this appeal is whether one set of joint tort-feasors, respectively the owner and the driver of one of two automobiles involved in a collision, may offset in their answer medical payments reimbursed to the plaintiff, a passenger of the other vehicle, by the insurance carrier of the latter vehicle's owner, in pursuance of a provision for such benefit in the latter's liability policy.

The foregoing question arises from the following background in this case. On March 5, 1967, the plaintiff Racla Grynbal was a passenger in a car owned and operated by the defendant Abraham Grynbal. The Grynbal vehicle came into contact with a car owned by the defendant Albert Mandel and driven by the defendant Gloria Mandel at or near the intersection of Avenue I and Nostrand Avenue, in Brooklyn. The plaintiff jointly sued Abraham Grynbal and the two Mandels, alleging in her complaint that she was injured in consequence of the negligence of all the named defendants and that she incurred such severe injuries as to warrant $100,000 in damages.

After the two sets of defendants had separately appeared and answered, the defendant Grynbal moved to amend his answer so as to allege therein by way of offset that his liability carrier had reimbursed the plaintiff in the sum of $557.85 for medical payments incurred by her under the medical payment provision in his automobile liability policy. Thereafter, the defendants Mandel served notice of cross motion seeking leave to amend their answer to plead as a setoff the same $557.85.

By order made on July 18, 1968, the learned Special Term granted the Mandel cross motion; and by the terms thereof the defendants Mandel were granted leave to serve an amended answer pleading the $557.85 offset. The order was granted on the basic theory that, since the complaint alleged that the defendant Grynbal and the defendants Mandel were joint tort-feasors, the latter were entitled to offset the plaintiff's receipt of medical benefits from Grynbal's carrier. In consonance therewith there was invoked the principle that payments by one joint tort-feasor on account of his liability to the plaintiff reduce *pro tanto* the amount of damages assessable against other joint tort-feasors.

Subsequently the plaintiff moved to vacate the order of July 18, 1968 and to renew and/or reargue the Mandel cross motion. By order made on September 10, 1968, the plaintiff's motion was granted on the view that the defendants Mandel may not use as an offset against the plaintiff's prospective recovery moneys she received from Grynbal's carrier, particularly since the carrier had allegedly made '' a claim on this money.''

The basic question on this appeal is whether the learned Special Term was right the first time, when the cross motion of the defendants Mandel was granted, or right the second time, on reargument, when this cross motion was denied. Both the appellants and the respondent, as well as the *amicus curiæ,* all agree that insofar as the defendant Grynbal is concerned he is entitled to plead the offset because, as an alleged wrongdoer, he

was "a person prudent enough to take out a policy of insurance to indemnify plaintiff" (*Moore* v. *Leggette,* 24 A D 2d 891,. affd. 18 N Y 2d 864). The question, on which the parties part, and on which the learned Special Term faced both ways, is whether the defendants Mandel, as parties who were not prudent enough to obtain coverage, may, nevertheless, as joint tort-feasors, plead the prudence, so to speak, of their co-tort-feasor to the extent that the latter's carrier did actually reimburse the plaintiff for medical expenses. In view of the fact that *Moore* v. *Leggette* (*supra*) dealt only with a single defendant tort-feasor, the problem is whether the principle pronounced therein should be extended to hold that the prudence of one joint tort-feasor shelters all other named tort-feasors on the same side of the case, or should be limited to hold that the prudence of one tort-feasor is of benefit only to him alone and may not constitute a windfall or shelter for other joint tort-feasors.

Stated another way, the problem at bar is, where more than one wrongdoer is involved, may the plaintiff be allowed to recover her full claim against nonprudent defendants and, at the same time, be restricted to a reduced recovery against the prudent defendant, i. e., reduced by the medical expenses which his carrier has remitted? In other words, may the parties in joint tort-feasor suits and under the jury system have to face the problem of alternative amounts of recovery by the plaintiff against the different defendants in the same lawsuit for the identical claim of damages for personal injuries?

In our opinion, the order of July 18, 1968 was providently made and should not have been vacated, in that it properly allowed the defendants Mandel to plead the offset. In the rationale on which that order was based, it was properly held that payments to the plaintiff by one joint tort-feasor on account of his liability reduced *pro tanto* the damages recoverable from the other joint tort-feasors. (General Obligations Law, § 15-103; *Bellamy* v. *Prime,* 25 A D 2d 923; *Livant* v. *Livant,* 18 A D 2d 383, 385, app. dsmd. 13 N Y 2d 894).

Under the circumstances related, it is our view that the medical expenses reimbursed to the plaintiff by the defendant Grynbal's carrier could not be deemed exempt from credit to the defendants Mandel by the doctrine of collateral source payments, since such expenses were paid for by a wrongdoer (*Moore* v. *Leggette, supra*) and were not derived from insurance or other source of benefit which the plaintiff directly or indirectly provided for herself (*Szybura* v. *City of Elmira,* 28 A D 2d 1154, 1155). Moreover, under settled authority, the plaintiff may not be permitted to receive a double satisfaction for

the same injury (*Lucio* v. *Curran,* 2 N Y 2d 157, 162) and must be held to the rule that "damages must be compensatory only" (*Steitz* v. *Gifford,* 280 N. Y. 15, 20).

In addition, it must be noted that, if allowed the privilege of offset in their amended answer, the defendants Mandel will be benefitted only in the same manner as joint tort-feasors generally receive the benefit of a partial payment made by one of them; and, in the internal adjustment of obligation, as between the defendants, upon any settlement in this case, or upon payment of a judgment in the plaintiff's favor, the defendants Mandel will be required, in contribution to the defendant Grynbal, to reimburse him (or his carrier) for one half of the actual medical expenses previously paid to the plaintiff. In effect, the defendants Mandel will thus eventually have to bear their one-half share of the medical expenses paid to the plaintiff by the defendant Grynbal. Accordingly, the contentions that the defendants Mandel have no responsibility in connection therewith and will receive an unearned windfall are not correct.

In this light, the defendants Mandel may be considered on a parity and in a unity with the defendant Grynbal and, like Grynbal, covered by the rule that a "defendant wrongdoer" may claim in mitigation of damages the proceeds of an insurance policy which his prudence and expense has provided for the plaintiff's protection (*Moore* v. *Leggette,* 24 A D 2d 891, 892, *supra*). While *Moore* v. *Leggette* dealt with a single tortfeasor who alone had defrayed the expense of furnishing insurance for the benefit of the plaintiff therein, and while, at bar, the defendants Mandel did not so far bear any of the cost of insurance protection afforded to the instant plaintiff by the defendant Grynbal's policy, in the present posture of this case — at a stage in the pleading phase of the case — the defendant Grynbal and the defendants Mandel, charged as joint tortfeasors in the complaint, stand on equal footing of potential liability to the plaintiff, and each shares in any benefit the other confers upon the plaintiff (cf. *Siler* v. *State of New York,* 31 Misc 2d 1, 3; *Zucker* v. *Baker,* 26 A D 2d 945, 946).

The foregoing determination that the defendant joint tortfeasors all stand in one position, at this pleading stage of the action, and may all assert the offset, borne of the prudence of one of them, is limited, of course, to the eventuality that the plaintiff will settle this case, or prevail on trial as to all the defendants. If, perchance, the plaintiff recovers only against the defendants Mandel and fails to recover against the defendant Grynbal, there then will be no situation where recovery is granted against joint tort-feasors; and the defendants Mandel,

having procured no insurance payment benefit to the plaintiff, will not be entitled to have the benefit of an offset available to a single tort-feasor who provided such payment coverage (*Moore* v. *Leggette, supra*). Of course, if the plaintiff recovers only against the defendant Grynbal, the latter is entitled, as is conceded, to the benefit of his offset (*Moore* v. *Leggette, supra*).

Insofar as Special Term held that the carrier of the defendant Grynbal had asserted "a claim on this money", we fail to find any support in this record for such conclusion. No instrument of subrogation or suretyship appears in this case as was discussed in a case heavily relied upon by the plaintiff at bar (*Silinsky* v. *State-Wide Ins. Co.*, 30 A D 2d 1). In *Silinsky*, in an action by a member of the insured's household for reimbursement of medical expenses under an automobile liability policy issued by the defendant carrier, it was basically held that the collateral source payment rule did not apply against the carrier, if the carrier could establish that the plaintiff recovered these medical expenses from the tort-feasor, and that the carrier should be permitted to plead that recovery, particularly as, under the policy, it was a surety who was subrogated to the rights of the plaintiff. In *Silinsky* it was further held, however, that the plaintiff could recover summary judgment where the defendant carrier merely showed that the plaintiff had made a settlement with the tort-feasor, but failed to raise a genuine issue of fact as to whether the settlement had included the medical expenses in issue.

In *Silinsky*, therefore, it was manifest that the tort-feasor's carrier might be entitled to subrogation if it could make a showing that it stood in the shoes of its insured tort-feasor. At bar, absolutely no evidentiary showing of either suretyship or subrogation was made in the name of the defendant Grynbal's carrier; and, in fact, the defendant Grynbal's motion to amend his answer so as to plead the offset here involved was postulated on the proposition that he (and not his carrier) was entitled to receive credit for this medical payment. The contention, therefore, that *Silinsky* applies at bar is without persuasive force.

While in the papers at bar it was alleged that the plaintiff was required "to and did execute an assignment", no particulars thereof or a copy of any instrument of assignment to Grynbal's or any other person's carrier appear as part of the record. For that reason, it seems to us that no conclusion that the plaintiff has alienated her right of recovery for the medical payments by assignment is presently possible, at the current pleading stage of this action. The claim that a plaintiff

who receives medical expense reimbursement under a defendant motorist's insurance policy may be considered a third-party beneficiary of such contract has apparently been rejected (*Moore v. Leggette*, 18 N Y 2d 864, 865, 866). As a consequence of the lack of substantiation of subrogation, assignment, or third-party beneficiary status, no claim on any portion of the plaintiff's recovery appears to be part of this case.

Under all of the circumstances discussed, the order dated September 10, 1968 should be reversed, on the law and the facts, with $10 costs and disbursements, and the plaintiff's motion to vacate the order dated July 18, 1968 and for other relief denied, with $10 costs.

BRENNAN, J. (dissenting). The claimed absence of proof in the record concerning the plaintiff's assignment to the defendant Grynbal's carrier is immaterial. It should be noted that the defendants Mandel do not question that such an assignment existed, but, rather, inferentially challenge it on the ground that it may not have been executed pursuant to the Grynbal's insurance policy provisions (cf. *Miller v. Liberty Mut. Fire Ins. Co.*, 29 A D 2d 982). Nevertheless, the plaintiff's attorney, in his affirmation submitted on the motion to reargue, averred that such an assignment occurred. This allegation is uncontradicted and, if deemed to be the fact, it is apparent that the plaintiff will not obtain a double recovery (see *Wyman v. Allstate Ins. Co.*, 29 A D 2d 319, mot. for lv. to app. den. 22 N Y 2d 646). However, assuming that proof of such assignment is insufficient, the result reached by the majority appears to be contrary to well-settled principles as previously set forth by this and other courts.

Generally, payment from collateral sources does not reduce the amount recoverable in a personal injury action against the tort-feasor (*Coyne v. Campbell*, 11 N Y 2d 372). Accordingly, it has been held that damages cannot be mitigated because of payments received by the injured party from disability compensation, pension funds or retirement allowances (*Brumel v. Whol*, 29 A D 2d 843; *Szybura v. City of Elmira*, 28 A D 2d 1154; *Carroll v. Roman Catholic Diocese of Rockville Centre*, 26 A D 2d 552, affd. 19 N Y 2d 658; *Seidel v. Maynard*, 279 App. Div. 706; *Lehr v. City of New York*, 30 Misc 2d 953, affd. 16 A D 2d 702; *D'Amico v. Resnik*, 22 Misc 2d 545). Furthermore, it is settled that evidence of insurance proceeds paid to an injured plaintiff or third-party beneficiary of an insurance contract is not admissible in mitigation of damages (*Healy v. Rennert*, 9 N Y 2d 202; *Cady v. City of New York*, 14 N Y 2d 660, affg. 19 A D 2d 822; *Silinsky v. State-Wide Ins. Co.*, 30 A D 2d

1; cf. *Rubin* v. *Empire Mut. Ins. Co.*, 32 A D 2d 1). However, in *Moore* v. *Leggette* (24 A D 2d 891, affd. 18 N Y 2d 864) this court held that a defendant who is "prudent enough" to procure insurance for the benefit of the injured party is entitled "to the benefit of such foresight and to reduction in damages to the extent" that payment had been made by the insurance carrier (p. 892). The majority is now apparently departing from the salutary rule espoused in *Moore* and gives to the defendants Mandel the benefit of one half of medical payment paid to the plaintiff on behalf of the defendant Grynbal. On the record before us this windfall is unwarranted and has no support in statute or case law.

Section 15-103 of the General Obligations Law, which is cited by the majority for the proposition that payments by one joint tort-feasor reduce *pro tanto* the damages recoverable from the other joint tort-feasor, is inapplicable for two reasons. First, the payment made herein was contractual in nature and is due the plaintiff even if it be ultimately held that the defendant Grynbal was not negligent.

In *Silinsky*, this court recently said (30 A D 2d 1, 4-5): "In the case at bar, although the plaintiff did not effect this coverage or contribute to the fund, the defendant was under a contractual obligation to pay her. If the plaintiff had recovered from the insurer and sued the tort-feasor, we would be of the opinion that the latter could not plead such recovery in reduction of damages. In that situation, the plaintiff as a third-party beneficiary to the contract should have the same rights as the insured who purchased the coverage."

In *Moore* (*supra*), this court gave to the plaintiff, as a third-party beneficiary, the benefits of the defendant's insurance coverage, but carved an exception out of the collateral source rule and permitted the defendant to plead his carrier's payment in reduction of damages. Contrary to the assertion contained in the majority opinion that the third-party beneficiary theory has apparently been rejected (citing *Moore* v. *Leggette*, 18 N Y 2d 864, 865), neither the affirmance without opinion by the Court of Appeals nor a careful reading of the State Reporter's notes leads to that conclusion. *Silinsky* merely reaffirmed that result. Consequently, it is clear that the legislative policy embodied in the cited provision of the General Obligations Law does not come into play when medical payments are required to be made on behalf of an insured, pursuant to a contract of insurance, and whether or not the insured is a joint tort-feasor (*Mid-Cent. Mut. Cas. Co.* v. *Spanjer*, 101 Ill. App. 2d 468).

Secondly, that statutory provision specifically excepts, from the general joint tort-feasor payment rule, payments made on behalf of a joint tort-feasor where the payor " stand[s] in the relation of a surety." At bar, no effort is made by the defendants Mandel to otherwise characterize the insurance carrier.

As previously stated, whether the assignment by the plaintiff is in the case or not is immaterial since, adopting the most favorable view of the evidence on behalf of the defendants Mandel, the plaintiff can recover compensatory and special damages from the tort-feasor where the carrier has waived its subrogation rights (see *De Cruz* v. *Reid,* 69 Cal. 2d 217). Furthermore, the result herein would appear to be contrary to those cases which permit an insured plaintiff to recover from his carrier and still recover the full amount, including the sum previously reimbursed by the insurer, from the tort-feasor (*Healy* v. *Rennert,* 9 N Y 2d 202, *supra*; *Cady* v. *City of New York,* 14 N Y 2d 660, *supra*). The theory is that it is unfair to require one who falls within the ambit of insurance coverage to forego its benefits and give to the tort-feasor, excepting the prudent defendant, an undeserved windfall. The ultimate burden is placed upon the perpetrator of the injury while, in the ordinary case (in which the insurer would have subrogation rights), the plaintiff recovers for his actual economic loss.

At bar, the net result of the instant determination is to deprive the prudent defendant of the benefits delineated in *Moore* and to give to his codefendant an undeserved windfall *pro tanto.* Absent significant strong public policy considerations, I perceive no persuasive rationale for reaching that conclusion.

The order should be affirmed.

CHRIST, Acting P. J., and BENJAMIN, J., concur with RABIN, J.; BRENNAN, J., dissents in opinion which HOPKINS, J., concurs.

Order reversed, on the law and the facts, with $10 costs and disbursements, and plaintiff's motion denied, with $10 costs.