OPINION OF THE COURT
Kenneth H. Lange, J.
In this wrongful death action, defendant/third-party plaintiff New York Racing Association, Inc., and third-party defendant Pinkerton’s New York Racing Security Service, Inc., have moved for leave to amend their respective answers to assert as a setoff certain pension and insurance benefits received by plaintiff as a result of decedent’s death. These applications raise *972 intricate issues concerning the “collateral source rule” as affected by the respective status of these defendants in this lawsuit.
Whether or not to grant such leave in the case at bar turns on the prospective validity of the defense proposed to be asserted. Although leave to amend is to be “freely given” (CPLR 3025 [b]), leave to assert a meritless cause of action or defense will not be granted (see, General Motors Acceptance Corp. v Shickler, 96 AD2d 926).
The facts relevant to the instant applications are as follows. Plaintiff’s decedent was killed as a result of a motor vehicle accident which allegedly occurred in the course of his employment. Plaintiff subsequently commenced this action, as administratrix of the decedent’s estate, against, inter alla, the New York Racing Association (NYRA), which owned the racetrack where decedent was employed. Decedent was not employed by NYRA, however, but by Pinkerton’s New York Racing Security Service. Although Pinkerton’s could not have been sued directly by plaintiff (see, Workers’ Compensation Law § 11), NYRA impleaded it for the purpose of possible indemnification (see, Westchester Light. Co. v Westchester County Small Estates Corp., 278 NY 175).
In the course of the preparation of this matter, it apparently came to the attention of Pinkerton’s that plaintiff may have been entitled to certain death benefits as a result of decedent’s employment. Pinkerton’s then moved for a discovery order directing plaintiff to furnish authorizations to determine whether such payments had been made. According to the affidavit of Robert E. Quirk, a Pinkerton’s vice-president, submitted in support of that application, four types of payments to decedent’s estate are claimed: (1) $50,000 paid pursuant to the terms of a life insurance policy with the Hartford Insurance Company, paid for by Pinkerton’s; (2) benefits from the pension fund of decedent’s union, to which Pinkerton’s and decedent’s previous employer had contributed, but as to which Pinkerton’s had no knowledge of availability of benefits or payment; (3) an accidental death policy with the Metropolitan Life Insurance Company, about which Pinkerton’s knew nothing except that it may have existed; and (4) workers’ compensation benefits paid pursuant to Pinkerton’s policy.
By order dated September 13, 1984, the Honorable W. Denis Donovan, a Justice of this court, granted the application for discovery but expressly declined to determine whether these benefits, if in fact paid, would be available to Pinkerton’s as a *973 setoff against plaintiff’s claim. On the basis of this disclosure, NYRA and Pinkerton’s have made the instant applications to amend their respective answers to assert these benefits as a setoff. They have provided no further information, however, as to the nature of these benefits, who paid for them, and what amounts, if any, have been paid.
These applications present the issue which Justice Donovan properly declined to address. Its disposition requires two determinations. First, are these benefits of such a character that they would generally be available as a setoff to any damages which may be awarded the plaintiff? Second, if so, can they be asserted by these particular defendants in their respective positions in this lawsuit?
The “collateral source rule” requires the tort-feasor to bear the full cost of the injury he has caused regardless of any benefit the victim has received from an independent or “collateral” source (see, Restatement [Second] of Torts § 920A [2]). As a general rule, in this State the damages recoverable by an injured party from a tort-feasor will not be diminished by payments received from third parties (see, Silinsky v State-Wide Ins. Co., 30 AD2d 1; Szybura v City of Elmira, 28 AD2d 1154). The law does not favor double recovery and is loathe to require the tort-feasor to pay damages where the injured party has already been compensated. However, the wrongdoer is not entitled to the benefit of a fund created by the plaintiff himself (see, Fleming, The Collateral Source Rule and Contract Damages, 71 Cal L Rev 56, 58). Insurance proceeds and other third-party payments which the injured party has procured himself are therefore generally not considered to reduce his recovery from the tort-feasor.
This rule is not absolute, however, and has been held not to apply to purely gratuitous benefits. In Drinkwater v Dinsmore (80 NY 390 [1880]), the Court of Appeals held that the defendant in a personal injury action is entitled to show that the plaintiff’s employer had continued to pay his wages during the period of his disability. The court reasoned that such proof was offered to disprove the claim of lost wages, and not to establish a collateral source payment. The collateral source rule was held to be inapplicable. Likewise, in Coyne v Campbell (11 NY2d 372), a plaintiff who happened to be a physician was denied recovery for medical expenses because the medical services claimed had been provided as a courtesy by his professional colleagues. It has also been held that where the tort-feasor herself provides benefits to the injured party through an insurance policy, she is entitled to *974 claim those benefits as a setoff (see, Moore v Leggette, 24 AD2d 891, affd 18 NY2d 864). The rationale is that the defendant is entitled to the benefit of her foresight.
Benefits are not gratuitous, however, to the extent that they are a part of the consideration for services previously rendered by the injured party. The rule of Drinkwater v Dinsmore (supra) is limited in this respect and does not exclude from the general collateral source rule any payments which are provided as a result of a bargain between an employer and the injured employee. Pension, disability, insurance and other benefits which form a part of the employment compensation of the injured party will not be set off against his recovery (see, Klein v United States, 339 F2d 512; Cunningham v Rederiet Vindeggen A/S, 333 F2d 308; Matter of McKay v Town of West Seneca, 51 AD2d 373, 378 [dissenting opn of Mahoney, J.], revd on dissent of Mahoney J., 41 NY2d 931; Carroll v Roman Catholic Diocese, 26 AD2d 552, affd 19 NY2d 658). In these circumstances, the partiés have agreed to compensation by means of such fringe benefits in lieu of cash, with which the injured party could have provided similar protection for himself had he so desired. In essence, the plaintiff is entitled to those benefits which he has paid for, directly or indirectly.
In the case at bar, the nature of the payments in question has not yet been established definitively. On the record presently before this court, the accidental death policy is merely a collateral third-party payment within the meaning of the general rule, and is therefore not available for use as a setoff. The workers’ compensation benefits were provided pursuant to the legal obligation of Pinkerton’s as employer (see, Workers’ Compensation Law § 50), and thus do not fall within the Drinkwater exception to the general rule. The life insurance and pension benefits, however, were at least partially funded by Pinkerton’s, and there has been no showing that it was contractually obligated to provide them. On this record, therefore, these payments do come within the exception to the collateral source rule.
The availability of these payments as a setoff in this lawsuit depends on a determination of the second issue, whether NYRA and Pinkerton’s, respectively, may assert such a defense. Regardless of the nature of these payments, there is no evidence that NYRA was in any way responsible for these benefits, that it contributed to the fund which provided them, or that it even knew of them until after the commencement of this litigation. NYRA can benefit from such payments, if at all, only derivatively, through its relationship with Pinkerton’s.
*975 The Appellate Division, Second Department, has held that the Drinkwater exception to the collateral source rule can be asserted vicariously. In Grynbal v Grynbal (32 AD2d 427), the plaintiff had been injured as a result of a collision between an automobile driven by her husband, in which she was a passenger, and another automobile. The plaintiff sued both her husband and the other driver, and, after answering and appearing, both moved for leave to amend their answers to claim as a setoff certain sums which had been recovered by the plaintiff pursuant to the terms of her husband’s automobile insurance policy, as reimbursement for medical expenses. All of the parties recognized that under the rule enunciated in Moore v Leggette (24 AD2d 891, affd 18 NY2d 864, supra), the husband was entitled to the benefit of such payments. The question was, “whether the principle pronounced therein should be extended to hold that the prudence of one joint tort-feasor shelters all other joint named tort-feasors on the same side of the case, or should be limited to hold that the prudence of one tort-feasor is of benefit only to him alone and may not constitute a windfall or shelter for other joint tort-feasors.” (32 AD2d, at p 429.)
The court held that the rule in Moore v Leggette (supra) should be so extended, reasoning that its purpose was satisfied where the expenses “were paid for by a wrongdoer (Moore v. Leggette, supra) and were not derived from insurance or other source of benefit which the plaintiff directly or indirectly provided for herself” (Grynbal v Grynbal, supra, p 429). Although the court relied on the axioms that damages must be compensatory only and plaintiff should not be allowed a double recovery, it was primarily concerned with the problem of verdicts differing among joint tort-feasors. The court’s alternative statement of the problem was as follows: “In other words, may the parties in joint tort-feasor suits and under the jury system have to face the problem of alternative amounts of recovery by the plaintiff against the different defendants in the same lawsuit for the identical claim of damages for personal injures?” (32 AD2d, at p 429.) For this reason, the court treated the third-party payments like a partial settlement by one of the tort-feasors, reasoning that, “in the present posture of this case — at a stage in the pleading phase of the case — the defendant Grynbal [plaintiff’s husband] and the defendants Mandel [the other driver and his wife], charged as joint tort-feasors in the complaint, stand on equal footing of potential liability to the plaintiff, and each shares in any benefit the other confers upon the plaintiff” (supra, p 430).
*976 Defendant NYRA and third-party defendant Pinkerton’s do not, however, stand in such a relationship to each other. There is no allegation that they are joint tort-feasors. The third-party complaint of defendant NYRA sets forth a claim that is necessarily for true indemnification. The claim rests not on a duty owed by Pinkerton’s to plaintiff, nor as a function of the duty owed by NYRA to plaintiff, but rather on a duty allegedly owed by Pinkerton’s to NYRA (see, Dole v Dow Chem. Co., 30 NY2d 143, 152; Westchester Light. Co. v Westchester County Small Estates Corp., 278 NY 175, supra). As Justice (now Judge) Simons put it in Smith v Hooker Chem. & Plastics Corp. (83 AD2d 199, 202): “The claim for indemnity is not derivative in the sense that the third-party plaintiff sues the third-party defendant for damages sustained by the injured party as a result of the accident. Rather, the third-party plaintiff obtains indemnity for the damages he has been required to pay plaintiff, i.e., the liability he has sustained by reason of his satisfaction of plaintiff’s direct damages.” It is for this reason that NYRA’s third-party claim for indemnification can be maintained against Pinkerton’s, even though plaintiff is barred from asserting a cause of action directly against it (see, Westchester Light. Co. v Westchester County Small Estates Corp., supra).
In this situation, defendant NYRA is not entitled to assert as a setoff the amounts received by plaintiff from a fund created by the third-party defendant Pinkerton’s. The perception of confusion in jury verdicts which underlay the decision of the Appellate Division in Grynbal (32 AD2d 427, supra) is not a consideration where the plaintiff can assert no cause of action directly against the third-party defendant. The plaintiff’s recovery against NYRA, if any, will be direct, and will not be affected by the allocation of liability between NYRA and Pinkerton’s. In the absence of this factor, there is no reason to allow NYRA the benefit of Pinkerton’s foresight. It neither contributed to the benefit nor altered its position in reliance upon its availability. In these circumstances, these funds are purely collateral as to NYRA, and there is no justification for departing from the general rule prohibiting their use as a setoff.
Pinkerton’s stands in a different position. It did provide the fund which paid the collateral benefits to the plaintiff, and would normally be able to assert those payments as a partial setoff. But as a third-party defendant against whom no direct claim can be made, it is in a unique position. The only possible cause of action against it with respect to this incident is in contract, not tort, and is by a party other than the recipient of the collateral benefits in question. Although the collateral *977 source rule is not necessarily limited to tort cases (see, Rutzen v Monroe County Long Term Care Program, 104 Misc 2d 1000; Fleming, The Collateral Source Rule and Contract Damages, 71 Cal L Rev 56), the collateral benefits here were paid to a party other than the party asserting the claim against this defendant. As the Court of Appeals has emphasized, an indemnification claim is not derived from the plaintiff’s cause of action, but rests independently on a duty owed by the third-party defendant to the third-party plaintiff (see, Dole v Dow Chem. Co., 30 NY2d 143, 152, supra; Westchester Light. Co. v Westchester County Small Estates Corp., supra). The collateral payments made to the plaintiff are immaterial to the satisfaction of this obligation, and may therefore not be set off against any damages which may be assessed for its breach.
In so deciding, this court is not unmindful of the public policy considerations which are relevant to this determination. In any collateral source problem, which Professor Fleming has described as a “prickly game of three-cornered catch” (Fleming, op. cit., p 56), the ultimate question is how is the plaintiff best compensated for the loss he or she has suffered. As Professor Fleming has noted, “[M]ost often the choice before the court is not between conferring a windfall on either plaintiff or defendant but of determining which of two obligors (the defendant or the collateral source) should assume primary responsibility for compensating the loss.” (Fleming, id., pp 56-57.) The situation at bar is made doubly complicated by the unique position of third-party defendant Pinkerton’s in this litigation.
In these circumstances, this court is of the opinion that the primary responsibility for compensating this injured party rests upon the tort-feasor, NYRA. A double recovery by the plaintiff is preferable, from a policy perspective, to allowing the defendant the benefit of a fund it did not create. It is true that Pinkerton’s may ultimately bear a part or all of this burden, and in this respect will be denied the benefit of the fund it did create. But Pinkerton’s almost certainly did not provide the benefit in contemplation of asserting it as it now does. It will therefore neither be encouraged nor discouraged by this holding from providing such benefits in the future.
In the final analysis, the basic policy underlying the collateral source rule, a judgment that any overcompensation, other than that provided directly and gratuitously by a tort-feasor, should redound to the benefit of the injured party, is more fully served by not allowing the defendant and third-party defendant to assert the benefits in question as a setoff. Accordingly, the *978 motions of defendant New York Racing Association, Inc., and third-party defendant Pinkerton’s New York Racing Security Service, Inc., for leave to amend their respective answers are denied.