OPINION OF THE COURT
Frank S. Rossetti, J.
This claim arises under the Unjust Conviction and Imprisonment Act of 1984. (See, Court of Claims Act § 8-b.) At trial the State did not seriously contest liability under Court of Claims Act § 8-b, but did contend that claimant has already received the fair and reasonable compensation called for under it (see, Court of Claims Act § 8-b [6]) from a settlement in a Federal court action. We so find.
On September 15, 1981, Clarisa Herndon, the foster mother of claimant’s then estranged wife, Delisa Durham Carter, was killed in Queens, New York City. Four days later claimant was arrested for Ms. Herndon’s murder and for assault upon his wife, largely based on accusations by the latter. Mr. Carter was indicted September 23, 1981, held without bail and on June 4, 1982 was convicted after a jury trial of second degree murder and first degree assault (see, Penal Law §§ 125.25, 120.10). On September 13, 1982 he was sentenced to 25 years to life on the murder charge and 5 to 15 years on the assault charge, said sehtences to run concurrently. He was thereupon imprisoned at the Fishkill State Correctional Facility and then the Comstock State Correctional Facility, a maximum security prison.
Claimant appealed his conviction and during the pendency of the appeal information came to light indicating that his wife had committed the murder and that exculpatory evidence relative to Mr. Carter’s alibi defense had been withheld or not supplied to the District Attorney by New York police officers involved with the case. Claimant moved to vacate his conviction (see, CPL 440.10) and on January 17, 1984 a hearing was held (see, CPL 440.30) after which claimant was released on *426 his own recognizance. At a further such hearing held January 25, 1984, his now former wife (Mr. Carter had remarried while in prison) confessed to the subject killing, under a grant of immunity, and admitted her allegations of assault by claimant were fabrications. Claimant’s conviction was thereupon vacated and the indictment against him dismissed with prejudice. Based on the foregoing, this court granted claimant’s trial motion for a directed verdict on the issue of liability. (See, Court of Claims Act § 8-b [5].)[1]
As to damages and the noted settlement, following his release claimant commenced an action in Federal District Court against New York City, its Police Commissioner and various police officers. This action was based on violations of Mr. Carter’s civil rights (see, 42 USC § 1983), as well as on pendent State claims for negligence and malicious prosecution against the city and its police department (claimant served notices of claim against them Apr. 11, 1984 [see, General Municipal Law § 50-e]). The action was settled pursuant to a stipulation filed June 6, 1986 for $450,000. The claim in this court was then timely filed July 28, 1986 (see, Court of Claims Act § 8-b [7]; L 1984, ch 1009, § 4).
The gist of the State’s defense is said Federal settlement compensated claimant for all damages resulting from his unjust conviction and imprisonment, the State is entitled to a complete setoff therefor under General Obligations Law § 15-108 and consequently claimant is not entitled to any recovery in the instant action. Claimant contends the Federal action and settlement are separate and independent of this claim, said section 15-108 is not applicable here and consequently there should be no setoff.
Relative to damages, the Unjust Conviction Act simply states that "the court * * * shall award damages in such sum of money as the court determines will fairly and reasonably compensate [claimant].” (Court of Claims Act § 8-b [6].) The Law Revision Commission Report, on which Court of Claims Act § 8-b was largely based, indicates only that it was felt no statutory restrictions should be imposed on the amount or type of damages recoverable under Court of Claims Act § 8-b. (See, 1984 Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY [hereinafter Report], at 2932-2933.) *427 "Rather, the traditional legal methods of assessing damages should be utilized.” (Id., at 2933.) This is consistent with the declared legislative purpose of Court of Claims Act § 8-b to fill in what was found to be a gap in existing tort remedies. (See, Court of Claims Act § 8-b [1]; Report, op. cit., at 2901, 2906-2914.) As stated in the Report, Court of Claims Act § 8-b "is based upon principles of fundamental fairness.” (Id., at 2934.) Accordingly, while apparently this is a case of first impression on the issue of damages under Court of Claims Act § 8-b,[2] we believe it consistent with the legislative intent to construe and interpret this statute consonant with traditional tort and other common-law principles as far as damages are concerned.
Turning then to the applicability of General Obligations Law § 15-108, we note initially that said section is a statutory modification of the common-law rule that release of one tortfeasor bars any further recovery against any other tort-feasors (cf., e.g., Hill v St. Clare’s Hosp., 67 NY2d 72, 83). Thus, but for this statute, traditional tort principles would bar any further action outright. More importantly, contrary to claimant’s argument that because this statute speaks only in terms of torts and tort-feasors, it must be so limited, it has been held that section 15-108 applies equally to claims and actions grounded on theories of liability other than tort. (See, County of Westchester v Becket Assocs., 102 AD2d 34, 45-46, affd 66 NY2d 642.) Therefore, the fact we are dealing with two species of statutory liability (i.e., Federal and State) does not require that said section be found inapplicable. It is damages we are concerned with here, not fault (see, Hill v St. Clare’s Hosp., supra, at 85), and to the extent this section operates to reduce a claim by the amount of the settlement consideration paid, we find it consistent with fair and reasonable compensation (see, Court of Claims Act § 8-b [6]).
Moreover, said section is also consistent with the more general equitable principle that a claimant may not obtain a double recovery for the same injuries and damages. (See generally, Berg-Bakis Ltd. v City of Yonkers, 90 AD2d 784; Zarcone v Perry, 78 AD2d 70, 79-81, affd 55 NY2d 782; Grynbal v Grynbal, 32 AD2d 427, 429-430.)[3] While this court may not grant strictly equitable relief, it may certainly consider *428 and apply equitable considerations and principles in the claims properly before it. (See, Ames Contr. Co. v City Univ. of N. Y., Herbert H. Lehman Coll., 108 AD2d 609, 611.) Such is proper here not only under this court’s general duty to render justice, but also under its specific duty under the Court of Claims Act § 8-b to determine fair and reasonable compensation " 'based on principles of fundamental fairness’ ” (see, supra, at 427). Therefore, whether deemed a reduction of claim under the General Obligations Law or an equitable avoidance of double recovery, we find that the subject Federal settlement must be considered in this court’s determination of the sum of money, if any, that claimant may recover under Court of Claims Act § 8-b:
The next question then is how and to what extent this settlement should be considered in abeyance of claimant’s damages. As indicated in analogous circumstances, it is the trial court action where the settlement is sought to be utilized that makes these determinations, not the settling party or even the settling court. (See, Hill v St. Clare’s Hosp., supra, at 85-86; Casey v State of New York, 119 AD2d 363, 366-369.) Further, while settlement in this context is a matter of defense, when the settling party seeks to limit its effect in said subsequent action, the burden is on him to establish why and to what extent it should be accorded less than its apparent full effect. (See, Hill v St. Clare’s Hosp., supra, at 84, 86; Retzel v State of New York, 94 Misc 2d 562, 570-572.)[4] We find this rule fully fair and reasonable here given claimant’s full knowledge of the settlement and defendant’s at best secondhand acquaintance therewith. Of course, implicit in this rule is the concept that generally the effect of a settlement is a factual question to be determined relative to the damages *429 otherwise awardable under Court of Claims Act § 8-b. Thus, in the present circumstances, we concur with claimant that the damages against which the settlement is sought to be applied should be determined so a proper comparison can be made between them and the damages covered by the settlement.
The Law Revision Report indicates that both pecuniary and nonpecuniary damages should be potentially recoverable under Court of Claims Act § 8-b. (See, Report, op. cit., at 2932-2933.) Further, both parties agree that the relevant period for damages is from conviction to the end of imprisonment, subject presumably to any subsequent or continuing damages shown to have proximately resulted from those incurred during said period (see, at 426-427, supra). Court of Claims Act § 8-b is one to redress damages resulting from unjust conviction and imprisonment and thus damages accruing prior to conviction should not be considered.
As to pecuniary damages, the only ones indicated here are lost wages[5] which, as noted, are limited to the 19 Vi months from conviction to release. Prior to his arrest claimant had worked as a laborer in a warehouse where he earned "close to” $300 per week. Mr. Carter testified he was laid off from that job the week before his arrest, but was then accepted for other employment as a truck driver, although he was not called in to work before his arrest. He alleged potential weekly earnings of $600 to $800 from that job, although he provided no independent proof thereof, or of the steadiness of such work. Claimant also indicated he did work as a truck driver after his release. Considering all the circumstances, we believe it proper to find that but for his conviction and imprisonment Mr. Carter would have been able to work as a driver and earn significantly more than previously (cf, e.g., 1 PJI2d 642). We thus find claimant’s evidence sufficient to support an award for lost wages of $40,000.[6]
 As to nonpecuniary damages, the principal elements here would appear to be loss of reputation and emotional *430 distress resulting from the unjust conviction and imprisonment. Claimant broke down the latter item into mental injuries and loss of liberty, but we believe both involve aspects of mental distress. The State argued that emotional distress while imprisoned required expert medical proof to substantiate it as a separate item of damages (see, at 431, infra) and that such distress "must be considered as part of the hardships and deprivations that are necessarily incident to imprisonment— whether just or unjust.” Defendant further argued that damages for "unjust imprisonment” (other than lost wages) should be computed at a flat rate of $50,000 per year, based on two prior cases dealing with unjust imprisonment, although those cases were not decided under the subject Court of Claims Act § 8-b. The State is clearly wrong in its first argument since the mental distress of one unjustly imprisoned is obviously different and greater than one justly in jail and patently it does not take expert testimony for a layman to understand that. As to defendant’s flat rate argument, per unit damage assessments have not generally been accepted in this State (cf, e.g., 1 PJI2d 629; cf. also, Tate v Colabello, 58 NY2d 84, 88) and, in any event, we deem such inappropriate given the variations within and between each individual’s circumstances and course of imprisonment (cf., e.g., Fisher v State of New York, Ct Cl, Rossetti, J., cl No. 70564, filed Jan. 13, 1986, at 8). An example of the latter is the fact claimant here was initially imprisoned in a less than maximum security facility and then a maximum security one. In any case, as indicated (see, at 426-427, supra), Court of Claims Act § 8-b does not specify the types of damages proper or how or even if they should be broken down and perhaps the various elements of damages should be treated only as factors to consider in arriving at a final damage determination. The distinctions made can thus be deemed only as aids in the analysis of such elements, but, nevertheless, we deem them appropriate and practically based.
As to loss of reputation, claimant testified that prior to the subject incident he had never been arrested or involved with the law and was known in the community from being a high school basketball star. His testimony also indicated that even after his release his reputation in the community was not wholly restored. We thus find he suffered some damages from loss of reputation.
As to emotional distress, Mr. Carter testified to the mental anguish he suffered from the discomfort, fear, lack of *431 privacy and loss of freedom while imprisoned. The aggravation of this anguish from his knowledge of his innocence was also testified to. (See, Report, op. cit., at 2903.) Claimant’s testimony additionally showed his mental distress due to the separation from his children and worry about them while in prison. (Id.) These and related factors such as humiliation and degradation (see, id., at 2902-2903, 2933) seemingly constitute the principal damages Court of Claims Act § 8-b was intended to recompense and the evidence and circumstances indicated Mr. Carter sustained such damages.
Claimant also testified to emotional damages he suffered after his release, such as estrangement from his son, dreams about his imprisonment and fear and distrust of police. As to these items of damage, while the court does not necessarily disbelieve Mr. Carter’s testimony relative to them, we consider such damages of the type that require expert medical or psychological support, both as to their existence and causality. (Cf. generally, 11 Fuchsberg, Encyclopedia New York Law, Damages, § 1059, at 74-78.)
Therefore, based on the foregoing, we find the evidence on nonpecuniary damages supports an award of $200,000. Consequently, claimant’s total compensation under Court of Claims Act § 8-b is fixed at $240,000.
That brings us to the final and critical determination, the amount of the above damages claimant has already been compensated for by the Federal settlement. We note initially that defendant’s position that the entire $450,000 thereof can be attributed to such damages is not supportable. It is clear other elements of damages were included in the settlement. First, the settlement stipulation (see, at 426, supra) specified that it included any attorney’s fees which may have been awardable under the Federal civil rights attorney’s fees statute (see, 42 USC § 1988). Said statute by its terms is not applicable to the subject State act, attorney’s fees are generally not recoverable as damages in this State, absent statutory authority (see generally, 36 NY Jur 2d, Damages, § 91), and such are specifically barred from recovery in the Court of Claims (see, Court of Claims Act § 27). Second, the noted pendent negligence and malicious .prosecution claims were ostensibly included in said settlement, although, as hereafter found, we believe only a part of the settlement can be attributed thereto.
Having so found, however, we think it clear the settle *432 ment did encompass damages of the type and for the period covered by Court of Claims Act § 8-b and claimant failed to show that more than a minority portion of the settlement can be attributed to damages other than those found above. In fact, claimant presented no evidence of the settlement other than an opening statement admitting its existence, amount, civil rights basis and date of payment (i.e., July 1986).[7] Rather, he merely made the legal argument that said civil rights basis rendered the settlement inapplicable to this action. Needless to say, we find unpersuasive this argument that the different purposes and rights protected under the Federal statute necessarily mean a settlement under it did not compensate claimant for said State damages. As observed (see, at 427, supra), it is damages we are determining, not liability. Whatever differences there may be in the theories or bases of liability of the two statutes, on this record we believe it proper to find that the bulk of the damages sought in the Federal action were ones sustained as a result of claimant’s unjust conviction and imprisonment. The basis of the Federal suit was the failure of the New York City police to provide the District Attorney and thence claimant with evidence that would have supported his alibi defense. However, this was matter that would most likely have only aided claimant at trial, not precluded or cut short his prosecution prior thereto. This is shown by the fact the complaint in the Federal action was based on claimed violations of the Sixth and Eighth Amendments, which deal with trial and punishment (i.e., imprisonment) rights. Hence the damages for violations of those rights arose only upon claimant’s conviction and imprisonment. If the jury in the criminal trial had acquitted Mr. Carter despite the lack of exculpatory evidence, he would have had no claim or supportable damages from said violations. These damages thus arose upon his conviction, the same as under Court of Claims Act § 8-b.
As to the noted items of damages not within those covered by Court of Claims Act § 8-b (see, at 431-432, supra), the attorney’s fees recoverable under the Federal statute would not necessarily have been what claimant’s attorney contracted for or even received under the settlement. Presumably they would have been less, particularly since the case was settled before trial. (See, e.g., 43 ALR Fed 243,298-299, § 21.) As to the pendent *433 State claims, the negligence claim appears untimely since the last conceivable acts of negligence ended December 1985 when the Queens District Attorney completed his investigation of the case with the interview of a final police officer. (See, General Municipal Law § 50-e [1] [a]; at 426, supra.) The malicious prosecution claim, while colorable, was subject to the same formidable obstacles that prompted the enactment of the subject act. (see, Report, op. cit, at 2906-2908.) Hence we believe little weight can be attributed to those claims as important factors in the Federal settlement and thus little of the amount paid thereunder can be considered as for them. In any event, even if the settlement can be deemed to include damages running from indictment (as to the malicious prosecution claim [cf., e.g., Broughton v State of New York, 37 NY2d 451, 459]) or some other time (as to the negligence claim), such would still encompass only a small part of claimant’s total damages inasmuch as his preconviction incarceration was well less than a third of his total time in prison (i.e., 8 Vi months versus a total of 28 months). Thus, we think it clear that said attorney’s fees and pendent State claims did not constitute the major part of the Federal settlement. Claimant made no argument with respect to those claims in his posttrial brief (he referred to the pendent claims only in passing and failed to even mention the claim for attorney’s fees) and he made no reference to them at trial (as noted, he referred only to the civil rights claim [see, at 432, supra]).
In any event, it was claimant’s burden to show that the portion of the settlement covering unjust conviction and subsequent imprisonment damages was less than the $240,000 found above. This he manifestly failed to do. The court recognizes there is an element of speculation in attempting to apportion a settlement into relevant and irrelevant parts, especially where the latter are not before the court (cf., Casey v State of New York, 119 AD2d 363, supra). Hence the approximate nature of our findings relative thereto. Nonetheless such findings are required by the Court of Appeals (see, Hill v St. Clare’s Hosp., 67 NY2d 72, 85-86, supra) and we believe the above proper, especially since we are not relying on them to determine claimant’s total potential damages (cf., Ott v Barash, 109 AD2d 254). That determination was made independent of the settlement, on the evidence at this trial. The onus and consequences of any sparsity of evidentiary support for said findings must be borne by the party responsible therefor (cf., Retzel v State of New York, 94 Misc 2d 562, supra).
*434 In sum, while claimant has shown liability under Court of Claims Act § 8-b, he failed to show that he has not already been fully compensated therefor. We believe unrecompensed damages are an essential element of a claim under Court of Claims Act § 8-b inasmuch as it would be pointless to enter a judgment for no damages. Hence we deem dismissal of the claim appropriate.
Accordingly, the State’s trial motion to dismiss, upon which decision was reserved, is hereby granted.

. The Supreme Court did not specify the grounds for vacatur of claimant’s conviction, but clearly paragraphs (b) and (g) of CPL 440.10 (1) applied. (See, Court of Claims Act § 8-b [5] [b] [ii].)

. The parties did not cite and the court’s research failed to uncover any appellate or even any trial-level decisions concerning such.

. Ott v Barash (109 AD2d 254) is not inconsistent with the application of said principle here because there a prior settlement was attempted to be used to bar a subsequent action outright, not just reduce the damages *428 ultimately determined in such action (see, supra, at 263; see also, at 426-427, supra). It specifically reaffirmed that such reduction should be accomplished in that action under General Obligations Law § 15-108 so that "plaintiff will not recover an amount greater than the amount of her damages, as determined in [that] action.” (Supra, at 264; see also, Grynbal v Grynbal, 32 AD2d 427, 430.)

. While defendant’s answer contains no specific reference to the Federal settlement, claimant raised no issue of surprise relative thereto nor any other objection to its presentation at trial. Such was proper in light of his obvious prior knowledge of the settlement and the fact defendant had -raised the settlement issue well before trial in a preliminary conference and later in a pretrial motion for summary judgment. We thus deem the State’s answer amended to include the settlement as a defense (see, CPLR 3025 [b], [c])-

. No diminution of future earning capacity was claimed or indicated (cf., 1984 Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2933).

. The ad damnum clause of the claim alleges only $25,000 in lost earnings, but the State raised no objection to the noted testimony showing greater damages and no prejudice appears. Thus, as with defendant’s settlement defense, we have deemed the pleadings conformed to the proof (see, CPLR 3025 [c]; Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23-24).

. The only documentary evidence on the settlement was the settlement stipulation and complaint in the Federal action annexed to defendant’s noted summary judgment motion (see, at 426, supra) which, at the State’s request, were made part of the record at trial.