**INTERNATIONAL ASSOCIATION OF CHIEFS OF POLICE, INC.**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY.**

Civ. No. Y–87–313.

United States District Court, D. Maryland.

June 6, 1988.

Michael D. Mason, Rockville, Md., counsel for plaintiff.

Andrew H. Marks, Richard McMillan, Jr., Luther Zeigler, Crowell & Moring, Washington, D.C., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff International Association of Chiefs of Police, Inc. ("IACP"), a non-profit Maryland corporation, filed a breach of contract case against its insurer, St. Paul Fire and Marine Insurance Company ("St. Paul") based on the denial of coverage under an association management liability insurance policy. The parties agree on the validity of the express terms of the written "plain English" contract but disagree on the application of these terms to facts surrounding plaintiff's claim of coverage. The Court finds that liability coverage reimbursement for legal defense costs were properly denied and will grant defendant's motion for summary judgment.

Plaintiff's complaint alleges that St. Paul issued a policy on September 28, 1982, insuring IACP against claims or suits based upon wrongful acts of directors, trustees, or officers of the association, and that the policy was renewed for a period of one year on May 3, 1983. Near the end of May, 1983, IACP learned that the United States government was investigating IACP for possible criminal conspiracy to defraud the government by mischarging employees' worktime to particular projects funded by a government equipment technology grant. On September 24, 1984, as a result of its own investigation, IACP entered into a settlement agreement with the United States which released all claims against IACP upon its payment of $340,000 to the government. On October 24, 1984, IACP made a claim upon St. Paul for coverage of this settlement payment and St. Paul denied coverage on March 5, 1985. On September 18, 1986, St. Paul denied coverage of IACP's subsequent claim for reimbursement of $114,674 in legal fees incurred in defending the government's claims.

## COVERAGE OF MISCHARGING AND DOUBLE DAMAGES

■ St. Paul raises several grounds for denying coverage of IACP's settlement with the government. Most importantly, the insurance policy explicitly limits coverage of claims to those reduced to judgment or settled with consent of the insurer. The following notice appears on the third page of the "plain English" policy:

*If your policy includes liability insurance.* No one can sue us on a liability claim until the amount of the protected persons' liability has been finally decided either by trial or by a written agreement signed by the protected person, by us and by the party making the claim.

On the eighth page, a section entitled "When We'll Pay" reemphasizes the point:

We'll pay a covered claim when both of the following conditions are met:

—the liability of you or the protected person has been established by final court judgment or we make a written admission of liability; and

—we are given proof of the claim within 90 days after the final judgment.

IACP admits that it did not have St. Paul's consent to settle the government's claim, but argues that "it would have been an exercise in futility for the IACP to attempt to obtain the consent of St. Paul ... since St. Paul had already made a determination that they owed no coverage for this claim." IACP Opposition at 4–5. Nonetheless, the insurance policy requires St. Paul's consent to liability, not merely an attempt to obtain its consent when feasible. IACP's only alternative was to allow the government's claims to proceed to trial; its decision to avoid further embarrassment by settling "in an effort to put this matter behind them," Opp. at 2, 12, 25, may have been good for public relations but did not comply with the terms of the insurance policy.

■ St. Paul properly refused to consent to settlement because the intentional overcharging of employee hours is not covered by the insurance policy. A section of the sixth page of the policy explains "What This Agreement Covers":

This agreement protects against loss or expense that occurs when a claim or suit is brought against you or any protected person for a wrongful act based on:

—an error or omission;

—negligence;

—breach of duty;

—misstatement, misleading statement; or

—publisher's liability.

On the ninth page of the policy, claims for dishonest acts are excluded from coverage:

*Dishonest Acts.* We won't cover the liability of a protected person for dishonest acts which a court holds were committed deliberately. Nor will we cover claims relating to any unlawful profit or advantage. However, if a claim of dishonesty, unlawful profit, or advantage isn't proven, we'll cover the expenses for defending that claim.

IACP argues that there was no intent to defraud the government, Opp. at 8, and that although the settlement agreement admits the mischarging it does not admit that it constituted intent to defraud. Opp. at 12, 25. IACP also admits that its chief of staff knew of the mischarging as early as 1980, Opp. at 10, 22, but emphasizes that it did not occur to him or to other persons protected by the insurance policy "that these actions might give rise to a potential claim against the IACP." Opp. at 12, 25. Plaintiff's arguments regarding knowledge and intent are misplaced. The policy's ex-

clusion of "claims relating to any unlawful profit or advantage" clearly excludes coverage of IACP's mischarging of time to government-sponsored projects. The settlement agreement itself described half of the $340,000 payment to the government as "constitut[ing] restitution to the United States for mischarging which occurred under the grants...."[1] Defendant's App.B at 1. Although IACP argues that "[t]he settlement does not constitute proof that any dishonest acts occurred or that any unlawful profit or advantage was realized," Opp. at 26, the settlement does constitute IACP's admission. It would be implausible for IACP to argue that it did not gain a financial advantage from the mischarging; indeed, the IACP's chief of staff admitted as much in his deposition. Smith Dep. at 25 (Defendant's App.L). IACP's payment to settle the government's claims of falsified employee time charges was not covered by its insurance policy with St. Paul.

## DUTY TO DEFEND

■ Although the right and duty to defend are "separate and distinct from the obligation to pay" claims against the insured, the duty exists only "when there are allegations in the complaint which are arguably within the scope of the policy coverage...."[2] 1A R. Long and M. Rhodes, *The Law of Liability Insurance* § 5.01 at 5–8 (1987). *See, Oweiss v. Erie Ins. Exchange,* 67 Md.App. 712, 718, 509 A.2d 711 (1986) (citing *Brohawn v. Transamerica*

---

**1.** The settlement agreement refers to the other half of the payment to the government as "constitut[ing] damages recoverable under 31 U.S.C. Section 3729...." The False Claims Act provides for recovery of "a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains ..., and the costs of the civil action...." 31 U.S.C. § 3729. The double damages provision is not considered a "penalty" but rather an assurance "that the government would be made completely whole" and the $2,000 penalty has been considered "restitution." *United States v. Bornstein,* 423 U.S. 303, 314, 96 S.Ct. 523, 530, 46 L.Ed.2d 514 (1976) (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52, 63 S.Ct. 379, 387–88, 87 L.Ed. 443 (1943)). Thus, although the insurance policy expressly excludes coverage of "fines or penalties imposed by law," it is unclear whether the doubling of the $170,000 mischarged by IACP must be considered uninsured

on that basis alone. However, because it is clear that the doubled damages are "relat[ed] to ... unlawful profit or advantage," the entire $340,000 payment is excluded from coverage.

**2.** The duty-to-defend clause in the policy at issue here is typical:

*Investigation, defense and settlement.* We'll defend any suit brought against you or any protected person for covered claims, even if the suit is groundless or fraudulent.

Only claims or suits against the insured which state facts, which if true, are within the ambits of the protection promised to the policyholder" are considered "covered" because the "term 'groundless, false or fraudulent' applies to the merits of the claim and not to coverage." 7C Appleman *Insurance Law and Practice* § 4682 at 23 (Berdal ed. 1979).

*Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842 (1975)); 7C Appleman, *Insurance Law and Practice* § 4682 at 23, § 4684 at 72 (Berdal ed. 1979).

The right is a valuable one in that it reserves to the insurer the right to protect itself against unwarranted liability claims and is essential in protecting its financial interest in the outcome of the litigation. . . . The liability policy clause that the insurer will defend naturally encompasses investigation and negotiation of any settlement prior to trial. And such right and duty to control the defense and settlement negotiations continues until such time as it is determined that there is no liability coverage. . . . "

*Appleman, supra*, § 4681 at 3–4. Thus, "[w]hen the insurer denies liability, it has no right to defend." *Id.* at 12. Moreover, "an insurer refuses to defend at its own peril and if reasonable investigation would have disclosed that there were no applicable exclusions and a defense was warranted the insurer becomes obligated for the costs and expenses incurred by the insured." *id.*, § 4691 at 248. If, as in the instant case, the insurer determines that the claim is not within the policy's coverage and refuses to defend, the insured may proceed to secure representation and may settle its claim out of court. "An insured making such a settlement is considered a volunteer, and recovery for such settlement is usually precluded by the 'no action' clause of the policy." *Id.*, § 4714 at 523–24. IACP's insurance policy contains such a "no action" clause entitled "If your policy includes liability insurance," reprinted, in part, above. Thus, any duty to defend or to reimburse defense costs must arise from an unusual provision of the liability insurance policy.

IACP admits that before entering into settlement negotiations with the government, it knew that "St. Paul had no duty to defend the IACP under the [insurance] policy against the claim of dishonesty resulting from the Grand Jury investigation" because it was "a criminal matter." Opp. at 3. Nonetheless, IACP argues that it should be reimbursed for the legal fees of several attorneys hired to represent sepa- rately IACP and two of its employees also under Grand Jury investigation, relying upon the last sentence of the policy's *"Dishonest Acts"* exception referred to above: "However, if a claim of dishonesty, unlawful profit or advantage isn't proven, we'll cover the expenses for defending that claim." IACP admits that "it is clear that St. Paul has no duty to provide a defense to a claim of dishonesty" but argues that St. Paul must pay for the defense if the claim "isn't proven", and that "[t]he settlement agreement certainly offers no proof that [IACP officers] engaged in any dishonest acts or gained any unlawful profit or advantage." Opp. at 26.

IACP apparently rests its claim for reimbursement on this alleged distinction between "proof" of its dishonest acts and the formal admission of mischarging in its settlement agreement with the government. The Court rejects any such distinction as inappropriate. The first sentence of the "Dishonest Acts" paragraph excludes coverage of "dishonest acts which a court holds were deliberately committed." By contrast, the last sentence refers to defense costs for a claim which "isn't proven." Perhaps it could be argued that the informal language of the "plain English" policy should be interpreted as analogizing the "proof" of the last sentence to the holding of a court referred to in the first sentence. However, that inference, which IACP apparently wishes the Court to make, is precluded because it has prevented a Court from ruling on the dishonesty issue by alleging and admitting that mischarging of employee time occurred, both in the settlement agreement and in its pleadings. Moreover, as noted above, although IACP minimizes its mischarging as distinct from "unlawful advantage of profit," it is clear and admitted by IACP's chief of staff that financial gain was the purpose and result of the mischarging. Although not the subject of a court's finding of fact, this Court will accept the "dishonesty" of IACP's mischarging as "proven" for purposes of denying IACP's claim that its defense costs should be reimbursed.

## ORDER

In accordance with the foregoing Memorandum, IT IS this 6th day of June, 1988 by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion for summary judgment BE, and the same IS, hereby GRANTED;

2. That judgment BE, and the same IS, hereby entered for defendant, and

3. That a copy of this Memorandum and Order be mailed to counsel.