Sylvia N. Casey et al., Appellants, v State of New York, Respondent.

Second Department, October 14, 1986

APPEARANCES OF COUNSEL

*Flower & Plotka (Warren Landau, Richard F. Plotka* and *Susan V. Jelaso* of counsel), for appellants.

*Robert Abrams, Attorney-General (Andrea Green* of counsel), for respondent.

## OPINION OF THE COURT

SPATT, J.

This appeal involves another dilemma which has arisen in the wake of General Obligations Law § 15-108, the statute designed to facilitate settlements in multiparty tort actions. The issue presented here concerns the impact of settling a case involving separate causes of action for wrongful death and conscious pain and suffering with two tort-feasors while continuing against another joint tort-feasor. In particular, we are asked to determine the proper forum and procedure for apportioning the settlement proceeds as between the wrongful death and conscious pain causes. We hold that the apportionment of the two causes of action for set-off purposes must be made following trial by the trier of the facts.

On August 20, 1982, the claimants' decedent was a passenger in an automobile involved in a two-car accident on New York State Route 25A in the Town of Huntington. The claimants commenced an action against the owner and operator of the vehicle in which their decedent was a passenger (Frank Koch) and the owner and operator of the other vehicle involved (Mark McAuliffe) in the Supreme Court, Suffolk County, and commenced a separate claim against the State of New York in the Court of Claims. The claimants' decedent suffered serious brain injuries as a result of the accident, was in a coma for two weeks, and died on September 3, 1982. In the Court of Claims, the plaintiffs' claim contains separate causes of action for conscious pain and suffering for the period prior to the decedent's death, and for wrongful death.

In the Supreme Court action, the claimants settled with driver tort-feasor Koch for $295,000 and with driver tort-feasor McAuliffe for $50,000, for a total partial settlement of $345,000. Neither release separately allocated the amounts to the wrongful death and the pain and suffering causes of action.

Thereafter, the claimants submitted a petition to the Surrogate's Court, Suffolk County, for leave to compromise and allocate the proceeds to the separate causes of action. Based on the papers submitted and without a hearing, the Surrogate approved the settlement, fixed the counsel fees and allocated $175,000 of the total proceeds to the pain and suffering action and $170,000 to the wrongful death action.

In the Court of Claims, the State moved for leave to amend its answer to include a third affirmative defense to the effect that "pursuant to Section 15-108 (a), General Obligations Law, any damages awarded to claimants herein must be reduced in the amount of $345,000 or in the amount of the released tort feasors equitable share of the damages under CPLR article 14, CPLR, whichever amount shall be greater". In opposition, the claimants argued that the State is bound by the apportionment set forth in the decree of the Surrogate's Court, Suffolk County, because the New York State Tax Commission was served with a citation in that proceeding. The State responded that it is not bound by the apportionment contained in the Surrogate's Court decree in that no hearing was held, and that such apportionment can be effectuated only by the trial court, in this instance, the Court of Claims. The State also maintained that the notice to the State Tax Commission was insufficient, and, in any event, the Tax Commission's interest lay not in insuring that a proper apportionment was made but that the decedent's taxable estate was properly ascertained.

By order dated September 10, 1984, the Court of Claims granted the defendant State's motion for leave to amend its answer to assert as an affirmative defense a setoff or reduction in damages based upon the settlement with the other defendants in the unallocated sum of $345,000, as requested by the State. The court further held that "the Claimants will be permitted, on the damage portion of the Claim, to submit evidence as to any basis for the apportionment. The Trial Court may then make a determination as to whether the entire amount or portions thereof may be set off as provided by General Obligations Law, Section 15-108". We affirm.

Ordinarily, leave to amend pleadings should be liberally given where no prejudice would result thereby to another party (CPLR 3025 [b]; *Fahey v County of Ontario,* 44 NY2d 934; *Frederic v St. John's Episcopal Hosp.,* 100 AD2d 571). Further, the merits of the proposed amendment will generally not be examined unless palpably insufficient, as a matter of law *(Barnes v County of Nassau,* 108 AD2d 50, 52; *Norman v Ferrara,* 107 AD2d 739, 740). However, since this is apparently an issue of first impression by an appellate court, we will address the merits of the proposed amendment with regard to the claimants' request for separate allocated setoffs for the wrongful death and pain and suffering causes.

In a wrongful death action, the causes of action for con-

scious pain and suffering of a decedent prior to his death and for the pecuniary damages resulting therefrom are materially separate and distinct, although there is some overlap and the same wrongful conduct is the basis for both claims *(Ratka v St. Francis Hosp.,* 44 NY2d 604). The recovery for conscious pain and suffering accrues to the decedent's estate, while the damages for wrongful death are for the benefit of the "distributees" of the decedent who have suffered "pecuniary injury" *(see, Ratka v St. Francis Hosp., supra,* at p 609; EPTL 5-4.1, 5-4.3, 5-4.4, 11-3.3).

The issue presented on this appeal is to determine the proper forum and manner for the apportionment of the proceeds of settlements entered into prior to trial involving the wrongful death and pain and suffering causes of action. Stated otherwise, can the settling parties themselves make the apportionment which would be binding on a nonsettling tort-feasor? We now hold that any such settlement sum, even though allocated by the parties or by a decree of the Surrogate, must, for the purpose of the actual setoff, be apportioned at trial; and it is the obligation of the finder of fact, after hearing the evidence, to make such an apportionment.

General Obligations Law § 15-108 provides that when a plaintiff settles with one or more tort-feasors, other tort-feasors are not discharged, and the claim of the releasor against any nonsettling tort-feasor is reduced to the extent of the amount stipulated in the release or in the amount of the released tort-feasor's equitable share of damages under CPLR article 14, whichever is greater. General Obligations Law § 15-108 (a) defines tort-feasors as "persons liable or claimed to be liable in tort for the same injury, or the same wrongful death".

The inclusion in the statute of the terms "injury" and "wrongful death", phrased in the disjunctive, would appear to indicate that the Legislature foresaw the potential problem of apportionment in wrongful death actions. That apparently is not the case. Nothing in the statute or its legislative history dealt with the issue of the method of apportionment with regard to the manner of implementing the subsequent setoff as against a nonsettling tort-feasor.

A review of the case law reveals that there is a dearth of authority in this State as to the manner in which a trial court implements the statutory mandate of General Obligations Law § 15-108 in a case such as this. In *Hager v Hutchins* (91

Misc 2d 402), a case involving causes of action for wrongful death and conscious pain and suffering, there was a settlement during trial with several defendants for the unallocated sum of $165,000. The court held that a prior order of the Supreme Court which approved the compromise of the claims against the settling defendants and allocated the proceeds entirely to the wrongful death cause of action was not binding on the trial court. The problem of apportionment was resolved by the Trial Judge by computing that the jury had allocated 10.7% of the total recovery to the conscious pain and suffering cause ($30,000 of the total damages of $280,000), and thereby reducing the amount of the plaintiff's verdict against the defendant found liable by 10.7% of $165,000, or the sum of $17,655, which was deducted from the $30,000 pain and suffering verdict.

In *Merrill v State of New York* (110 Misc 2d 260, *affd* 89 AD2d 802), a case involving separate causes of action to recover damages for personal injuries and loss of services, the trial court was confronted with a prior settlement by a joint tort-feasor in a gross unallocated amount. The court determined that the proper way to apportion the settlement proceeds "would be to do so in proportion to the damages found herein to have been sustained by the respective claimants" *(Merrill v State of New York, supra,* at p 267).

We hold that the self-created apportionment proffered by the claimants is not binding on the trial court. We are dealing with two separate and distinct causes of action. The State is entitled to a true setoff based on the merits of the respective causes of action. This apportionment must be predicated on the evidence adduced at the trial with regard to the monetary value of each cause of action. In the first instance, in the event of a finding of liability against the State, there must be a *"Dole-Dow"* apportionment of liability as between the State and the two driver tort-feasors who have settled. If the liability apportionment results in a greater share of the damages on the part of the driver tort-feasors, the State would be entitled to the benefit of such an apportionment. In the event the driver tort-feasors' share of damages is not greater than the sum of $345,000 paid by them, then the setoffs would be determined by the sums allocated by the trier of the facts to the respective wrongful death and pain and suffering causes.

In either event, the computation of the actual setoff becomes a ministerial function by the Trial Judge after determination of the factual issues resolving the allocation of the

damages by the trier of the facts. This means of computation is not only the manner required under the law but is the only fair procedure. For example, in this case it is alleged by the defendant's counsel, without contradiction, that hospital records reflect the fact that the claimants' decedent was in a coma and never regained consciousness between the accident and the date of death. Therefore, arguably, the claimants have either no conscious pain and suffering cause or a minimal pain and suffering cause in relation to the wrongful death cause of action. However, under the claimants' proposed allocation, $175,000 of the settlement could be allocated to a potentially nonexistent conscious pain and suffering cause of action, thereby improperly minimizing the setoff in the wrongful death action.

We turn now to the claimants' contentions that the apportionment contained in the Surrogate's decree is binding upon the State. In fixing the allocation of the proceeds for estate purposes, the Surrogate quite properly did not conduct a hearing on apportionment and apparently accepted the figures submitted by the claimants' counsel. Clearly, the State is not bound by any "agreement" as to allocation between the claimants and the tort-feasors' insurance carriers which is made without its knowledge or consent. It is a matter of common knowledge that, in most cases, this type of allocation is of no importance to a settling carrier which is generally concerned only with the amount of the total "package" rather than the division thereof.

Further, we reject the claimants' contention that the State is bound on the basis of service of a Surrogate's Court citation on the New York State Tax Commission, an agency of the State. The issue of allocation was not "litigated" by anyone in the Surrogate's Court proceeding. The New York State Tax Commission probably had no knowledge of the pendency or facts of this claim and, even if it had such knowledge, it had no interest in this Court of Claims litigation. The Tax Commissioner was interested only in the proper payment of the estate tax. Indeed, in that respect, the Tax Commission may have had an interest adverse to the State of New York's position in this negligence action. Clearly, the State did not have a full and fair opportunity to be heard on the question of apportionment in the Surrogate's Court proceeding (see, Merchants Mut. Ins. Co. v Arzillo, 98 AD2d 495, 502-503).

Finally, we specifically note that this decision is not intended to affect, in any manner, the present method of appor-

tioning the proceeds of the settlement of wrongful death and conscious pain and suffering causes of action in the Surrogate's Court. That forum is properly concerned with estate and taxation problems unrelated to the issue of subsequent allocation for set-off purposes at the trial of the underlying tort action.

The allocation in this case must be made by the Court of Claims after trial. Accordingly, we find that the Court of Claims did not abuse its discretion when it did not apportion the setoff for settlements between the claimants and Koch and McAuliffe based on the prior decree of the Surrogate's Court, Suffolk County.

LAZER, J. P., NIEHOFF and KOOPER, JJ., concur.

Ordered that the order of the Court of Claims dated September 10, 1984, is affirmed insofar as appealed from, with costs.