UNITED STATES of America, Plaintiff,

v.

ZAN MACHINE COMPANY,
INC., Defendant.

No. CV 90–1609 (ADS).

United States District Court,
E.D. New York.

Oct. 13, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Gary R. Brown, August V. Sellitto, Asst. U.S. Attys., Brooklyn, N.Y., for plaintiff.

Owen & Eddy (R. Christopher Owen, of counsel), White Plains, N.Y., for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

After a jury trial, the defendant Zan Machine Company, Inc. ("Zan") was found to have committed eight violations of the False Claims Act ("the Act"), codified at 31 U.S.C. §§ 3729–33. The jury also determined that, as a result of these False Claims Act violations, the Government sustained actual compensatory damages in the sum of $26,363.63.

The main issue before the Court is whether to setoff the sum of $30,000 paid in settlement by the former defendant Bourdon Forge Company, Inc., which was a subcontractor involved in the assembly of the same safety belts involved in this case.

In their post-trial memoranda, the parties raise the following issues: (1) how large a civil penalty should be imposed against Zan?; and (2) should the jury's award of compensatory damages to the Government be offset by the amount it received from the co-defendant which settled prior to trial, and, if so, in what manner should the $30,000 be setoff?

## FACTUAL BACKGROUND

On October 18, 1984, Zan was awarded a contract with the Department of the Air Force for the production of safety belts for military aircraft. This contract required that these safety belts meet certain specifications. Included in these requirements were that the belts be composed of specific types of metal, be of a certain strength and hardness, contain a certain amount of carbon, and that the metal parts be heat-treated.

In furtherance of its performance of the contract, Zan ordered safety-belt parts from Bourdon Forge Company, Inc. ("BFI"). These parts were not heat-treated and did not meet the strength, hardness and carbon requirements contained in the contract. Despite these shortcomings, Zan incorporated these parts into the seat belts it manufactured for the Air Force. Similarly, Zan acquired other component parts from a firm called Die–Matic Products, Inc. ("Die–Matic") which parts did not satisfy the contract's specifications. Zan also incorporated these parts into the military aircraft safety belts.

With regard to their shipments of the non-complying component parts to Zan, BFI and Die–Matic provided Zan with certificates of compliance which falsely certified that the shipments BFI and Die–Matic sent to Zan complied with the contract's specifications. As the jury determined, Zan presented eight of these false certificates to an agent of the Government in order to receive payment under the contract, knowing that the certificates were, in fact, false.

## PROCEDURAL BACKGROUND

This case was originally brought by the Government against both Zan and BFI. However, just prior to the trial the Government settled its claims against BFI for the sum of $30,000.

At the time this case went to trial, the United States pursued five causes of action against Zan: namely, breach of contract, breach of warranty, payment by mistake or erroneous belief, and two causes of action alleging violations of the False Claims Act. With regard to the False Claims Act causes of action, the Government maintained that Zan violated 31 U.S.C. § 3729(a)(1) in that Zan allegedly presented false or fraudulent claims to the Government for payment, knowing that such claims were false or fraudulent. In this case the "claims" were actually deliveries of the safety belts. The Government also contended that Zan violated § 3729(a)(2) in that Zan allegedly made, used, or caused to be made or used a false record or statement to obtain payment for or approval of a false or fraudulent claim, knowing that such statement or record was false or fraudulent, within the purview of the statute.

The trial of this case commenced before a jury on September 2, 1992. By its verdict returned on September 9, 1992 the jury determined that Zan had breached the warranty of fitness for a particular purpose, that Zan had breached its contract with the Government, and that the Government had made payments to Zan based upon the erroneous belief that the safety belts conformed to the contract's specifications.

With regard to the Government's causes of action under the False Claims Act, the jury determined that Zan had not violated § 3729(a)(1), finding that Zan did not know that the claims or deliveries it made to the Government were false or fraudulent. The jury did find, however, that Zan violated § 3729(a)(2) in that it knowingly made, used, or caused to be made or used false records or statements in order to · obtain payments for a false or fraudulent claim. With regard to the § 3729(a)(2) cause of action, the jury determined that on eight occasions Zan used a false record or state-ment to obtain payment of a false or fraudulent claim.

Finally, the jury determined that the Government sustained actual compensatory damages in the sum of $26,363.63. These compensatory damages were the same for the other causes of action sounding in breach of warranty, breach of contract, and payment by mistake.

## THE POST–TRIAL ISSUES

In their post-trial memoranda, the parties raise two issues which the Court now addresses. First, the Government argues that the amount it will receive from Zan, namely, damages plus the statutory penalty, should not be reduced by the amount it received in settlement of its claims against BFI. The Government contends that setoff is not proper in this case because, under the False Claims Act, Zan does not have a right of contribution from BFI, and that even if Zan was entitled to contribution, the payments made to the Government by BFI were, according to the Government, not for the same "injury" as that suffered as a result of the misconduct of Zan.

As to the second issue, Zan argues that the $2,000 statutory penalty provided by the False Claims Act be imposed once, three times, or not at all. Specifically, Zan initially contends that, although the jury found that Zan knew that eight of the certificates of compliance were false, these certificates were presented on only one occasion. Thus, Zan concludes, the statutory penalty should be imposed only once. In the alternative, Zan argues that the penalty be imposed only three times, which is the number of deliveries of the safety belts made by Zan to the Government. Finally, Zan maintains that the $2,000 penalty should not be imposed at all, as it contends that the false certificates were prepared by BFI, and the jury found that Zan did not know that the claim it presented to the Government was false.

## THE STATUTE

Prior to October 1986, the False Claims Act, 31 U.S.C. § 3729, provided in relevant part:

"A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person ...

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved;...."

In October 1986, the Act was amended to increase the civil penalty to between $5,000 and $10,000 per claim and to allow the Government to recover three times its actual damages. The Court has previously determined that because the events at issue occurred prior to the statute's amendment, the Act's former provisions govern.

## DISCUSSION

### I. Setoff

 It is hornbook law that a plaintiff cannot recover twice for the same injury. (*See, e.g., Phelan v. Local 305 of the United Ass'n of Journeymen,* 973 F.2d 1050, 1063 [2d Cir.1992] [citation omitted]; *Singer v. Olympia Brewing Co.,* 878 F.2d 596, 600 [2d Cir.1989], *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 [1990].)

"A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment." (*Singer v. Olympia Brewing Co., supra,* 878 F.2d at p. 600.)

Under the above rule, when a plaintiff settles with one defendant, a nonsettling co-defendant is entitled to a credit of the settlement amount against any judgment the plaintiff obtains against the nonsettling co-defendant as long as both the settlement and judgment represent common damages. (*Phelan v. Local 305, supra,* 973 F.2d at 1063 [*citing Singer v. Olympia Brewing Co., supra,* 878 F.2d at p. 600].)

The Government has failed to cite any case in which the amount of such a settlement by a co-defendant was not offset in a case brought under the False Claims Act. Without such precedent, the Court declines to depart from the well-settled rule to credit a defendant with the amount of a co-defendant's monetary settlement involving common damages.

On the contrary, the few relevant cases indicate that the damage award should be reduced by the amount of any previous payment made on the claim. In *United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), Model Engineering & Manufacturing Corporation, Inc. ("Model") and United National Labs ("United") were involved in supplying the Government with electron tubes which did not meet the required specifications. After the Government discovered that the tubes were deficient, it recovered $40.72 per tube from Model by way of settlement, and brought suit against United. At the trial the Government established that it had been damaged in the amount of $40.82 per tube. However, since the Government had already received $40.72 per tube from Model as settlement, the Court determined that the Government's actual damages were ten cents per tube, representing the difference between its actual damages, $40.82 per tube, and the amount received from United's co-defendant, $40.72 per tube.

*United States v. Thomas,* 709 F.2d 968, 972 and n. 8 (5th Cir.1983), involved the submission of false or fraudulent statements concerning eligibility to participate in a farm support program. In *Thomas* the court reduced the damage award to the Government by $15,500, the amount reimbursed to the Government by one of the participants in the scheme.

Nor is it apparent that the "injury" suffered by the Government as a result of the alleged wrongful acts of BFI differs from the "injury" suffered as a result of Zan's acts. The Complaint's allegations against BFI and Zan arise from the same set of

facts, namely, the assembly and presentation of safety belts which did not satisfy the specifications contained in the contract together with the presentation of certifications falsely stating that the belts did comply. The jury found that, as a result of these false claims, the Government sustained damages in the sum of $26,363.63. If the amount received from BFI is not setoff, the Government will recover *more* than a double recovery of its actual damages, namely, the additional sum of $30,-000. This actual unjust enrichment to the Government cannot be condoned by this Court.

The Government also contends that the amount it received from BFI was in settlement of not only the actual compensatory damages the Government sustained but also the statutory penalty which it would have received if the jury returned a verdict in the Government's favor against BFI. The Government contends that this penalty could have been as much as $44,000, which is $14,000 more than the settlement amount. However, there is no evidence that the parties intended that this settlement be applied to the statutory penalty claims against BFI. The Court declines to speculate as to the apportionment of this settlement between the Government's claims for actual damages and the civil penalties. Moreover, under New York law it is the obligation of the jury, after hearing the evidence, to allocate any settlement sum as to a plaintiff's various claims against a defendant. (*See Andrulonis v. United States,* 924 F.2d 1210, 1224 [2d Cir.1991] [citing *Casey v. State,* 119 A.D.2d 363, 507 N.Y.S.2d 159 (2d Dep't 1986) ].) It should also be noted that neither *Bornstein* nor *Thomas* contain any discussion of the apportionment of the respective settlements between actual damages and statutory damages.

For the foregoing reasons, the Court concludes that the entire sum received by the Government from BFI, namely, $30,000, be setoff from the doubled compensatory damages levied against Zan.

II. Assessment of the Statutory Penalty

■ It is well-settled that the False Claims Act permits the multiple imposition of the $2,000 civil penalty. (*United States v. Bornstein, supra,* 423 U.S. at p. 309, 96 S.Ct. at p. 527.) The Act has several purposes, one of which is "to provide for restitution to the Government of money taken from it by fraud." (*United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 388, 87 L.Ed. 443 [1943]. *See also United States ex rel. Fahner v. Alaska,* 591 F.Supp. 794, 798 [N.D.Ill.1984].) The Supreme Court has considered the $2,000 statutory penalty provided by the Act as part of such "restitution". (*United States v. Bornstein, supra,* 423 U.S. at p. 314, 96 S.Ct. at p. 530. *See also International Ass'n of Chiefs of Police, Inc. v. St. Paul Fire and Marine Ins. Co.,* 686 F.Supp. 115, 117 n. 1 [D.Md.1988].) Other purposes of the Act are to "punish[ ] and prevent[ ] frauds" (*United States v. Bornstein, supra,* 423 U.S. at p. 309 n. 5, 96 S.Ct. at p. 528 n. 5), and to discourage the working of fraud upon the Government (*United States v. Silver,* 384 F.Supp. 617, 620 [E.D.N.Y. 1974] [Bartels, J.], *aff'd,* 515 F.2d 505 [2d Cir.1975].)

The False Claims Act as it applies to this action provides for a $2,000 forfeiture for *each* false claim submitted by a defendant. (31 U.S.C. § 3729. *See e.g., United States v. Jacobson,* 467 F.Supp. 507, 508 [S.D.N.Y. 1979]. *See also, United States ex rel. Fahner v. Alaska, supra,* 591 F.Supp. at p. 800.) The issue with regard to the assessment of this penalty is how many of the false records or statements were made or used by Zan.

In *United States v. Bornstein, supra,* 423 U.S. at p. 313, 96 S.Ct. at p. 529, with regard to the imposition of the False Claims Act's penalty the Supreme Court stated: "[a] correct application of the statutory language requires ... that the focus in each case be upon *the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures* " (emphasis added).

Based upon the evidence presented at trial, the Court finds that the defendant's

contentions concerning the number of times the civil penalty should be imposed are unsupported. Rather, the Court finds, based upon the evidence and the jury verdict, that the $2,000 civil penalty should be imposed upon Zan in an amount consistent with the number of false certificates, namely, eight, which the jury determined that Zan presented to the Government. Of significance is the fact that Zan knew that the false certificates "were an essential element in subjecting the Government to a demand for money". (*United States v. Greenberg*, 237 F.Supp. 439, 443 [S.D.N.Y. 1965] [Weinfeld, J]. *See United States v. Board of Educ.*, 697 F.Supp. 167, 176 [D.N.J.1988] ["The reports were all essential elements causing the United States to part with its money. Defendants cannot maintain that any one of these reports had no responsibility for causing the release of [the Government funds]."])

In this case, while there is some dispute as to who prepared the false certifications, there is no dispute that Zan presented them to the Government "to get a false or fraudulent claim paid or approved". Imposing the civil penalty against Zan eight times, for each false certification which the jury determined it presented, penalizes Zan solely for *its own wrongful acts*, as *Bornstein* enunciates.

In its decision on the Government's summary judgment motion in *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790, 811 (D.C.D.C.1981), a case cited by Zan, the court noted that "the statutory term 'claim' should, in order to effect the remedial purposes of the Act, be broadly construed to include 'all fraudulent attempts to cause the Government to pay out sums of money.'" (*Alsco–Harvard Fraud Litigation, supra*, 523 F.Supp. 790, 811 [*quoting United States v. Neifert–White*, 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968)].)

The Court affirms the jury's determination that Zan committed eight violations of the False Claims Act and directs the entry of judgment on the civil penalty in the sum of $16,000. The Court notes that the purposes of the Act are best fulfilled by the imposition of the maximum civil penalty allowed under the statute. To impose this penalty only once, or even three times, would ignore a responsive and proper jury verdict. This penalty was obviously imposed by Congress to penalize a military supplier for possibly jeopardizing the lives of military personnel in order to make a profit.

## III. Computation of Damages

The law is clear that "the Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received by the Government from any source." (*United States v. Bornstein, supra*, 423 U.S. at p. 316, 96 S.Ct. at p. 531.) The jury determined that the Government sustained actual damages in the amount of $26,363.63, which when doubled equals $52,727.26. From this amount the Court subtracts the sum of $30,000 which the Government received from BFI, for a subtotal sum of $22,727.26. To this, the Court adds the civil penalty of $16,000, for a total judgment in favor of the Government against Zan in the sum of $38,727.26. The Court also awards the Government costs, as provided by the Act.

## CONCLUSION

For the foregoing reasons, based upon the jury verdict and the settlement setoff, the Court awards the Government judgment against the defendant Zan Machine Company, Inc., in the total amount of $38,727.26, plus costs. The Clerk of the Court is directed to enter judgment in favor of the plaintiff United States against the defendant Zan Machine Company, Inc. in the said sum of $38,727.26, plus costs, and is further directed to close this case.

SO ORDERED.