Dorothy CONRAD, individually and as administratrix of the estate of Randall Conrad, Plaintiff,

v.

BECK–TUREK, LTD, INC., d/b/a Skinner's Bar, and Augie's Bar at the Culinary Institute of America, Defendants.

BECK–TUREK, LTD., d/b/a Skinner's Bar, Third–Party Plaintiff,

v.

William DOWNEY and Alicia Shinnick, Third–Party Defendants.

No. 93 CV 0610 (BDP).

United States District Court, S.D. New York.

July 10, 1995.

James Fitzgerald, Karl Coplan, Friedman, Kates, Pearlman & Fitzgerald, Rutherford, NJ, for plaintiff.

Desmond C. Whitaker, Wilson Elser Moskowitz Edelman & Dicker, Louis H. Liotti, Beesecker & Koors, New York City, for defendant Beck–Turek.

Anthony D. Perri, New York City, for defendant Skinner's Bar.

MEMORANDUM DECISION and ORDER

PARKER, District Judge.

## FACTS

This action for personal injury arising from a single-car accident in Dutchess County, New York, in November of 1991, which resulted in the death of Randall Conrad ("the decedent"), is before this Court on the Defendants' and Third–Party Defendants' motions for summary judgment. The Plaintiff, Dorothy Conrad ("Conrad"), sues for violations of the New York Dram Shop Act, General Obligations Law § 11–101, and in common law negligence for (1) the wrongful death of the decedent, (2) the pain and suffering of the decedent, and (3) his loss of services, care, support, counsel and guidance.

Conrad is the decedent's mother and the duly appointed General Administratrix and Administratrix Ad Prosequendum of his estate. She brings this action in both her individual and representative capacities against the Defendants, Beck–Turek, Ltd., Inc. d/b/a Skinner's Bar ("Skinner's Bar") and Augie's Bar at the Culinary Institute of America ("Augie's Bar"). The Defendants have cross-claimed against each other and instituted a Third–Party action for contribution and indemnification against Alicia Shinnick ("Shinnick"), the owner of the car, and William Downey ("Downey"), the driver.

Certain facts are not in dispute. The accident occurred at 2:42 am, November 12, 1991, on Spackenhill Road in Poughkeepsie, New York. Earlier in the evening of November 11, at approximately 9:00 pm, the driver, Downey, was joined by Kevin Bohler ("Bohler"), Anthony O'Shea ("O'Shea") and the decedent at Augie's Bar where they

drank beer. The four men left Augie's Bar sometime after 10:00 pm. They arrived at Skinner's Bar sometime before 11:30 pm, where they shared pitchers of beer. Downey and Bohler also drank shots of hard liquor.

The four men left Skinner's Bar in Downey's car sometime between 2:10–2:30 am, on November 12, 1991, for a bar called Smiles. While descending a hill and rounding a curve on Spackenhill Road, however, Downey lost control of the car. The car fell down a 50–foot embankment and stopped after colliding with a tree at the bottom. The decedent died as a result of multiple skull fractures sustained during the accident. He was taken to Vassar Brothers Hospital in Poughkeepsie where he was pronounced dead at 3:40 am.

Before commencing this action, Conrad, as the Administratrix of the Estate, executed a General Release of claims against Shinnick and Downey, pursuant to a settlement agreement in the amount of $100,000.00—the full limit of the United Services Automobile Association ("USAA") vehicle insurance policy. In addition, in November of 1994, Conrad executed a stipulation of discontinuance as against Augie's Bar.

Previously, Skinner's Bar moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment. The Court denied the motion. Augie's Bar, and Shinnick and Downey have now moved for summary judgment. Skinner's Bar has renewed its motion for summary judgment.

## DISCUSSION

### I. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

■ The responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curium) (other citations omitted)). See also *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Ins.,* 804 F.2d 9 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (other citations omitted).

### II. *Third–Party Defendants' Motion for Summary Judgment*

In 1992, Conrad in her capacity as Administratrix released Shinnick and Downey from "all claims for personal injury suffered by Randall Conrad in an automobile accident which took place on November 12, 1991 in Poughkeepsie, New York which injuries resulted in the death of Randall Conrad." In exchange, Shinnick tendered payment in the full amount of the vehicle insurance policy— $100,000.

■ New York Civil Practice Laws and Rules § 1401 permits claims for contribution among joint tortfeasors. Section 1401 makes an exception, however, for a joint tortfeasor with whom the plaintiff has settled pursuant to New York General Obligations Law § 15–108 ("§ 15–108").[1] Upon a pre-trial release

---

1. General Obligations Law, § 15–108, provides: (a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant,

from liability, § 15–108 extinguishes any claim for contribution against the settling tortfeasor. The settling tortfeasor, in effect, buys his peace. The plaintiff's claim against the non-settling tortfeasor is reduced by the amount of the settlement or the settling tortfeasor's equitable share of the fault, whichever is greater.

Shinnick and Downey have moved for summary judgment seeking dismissal of Skinner's Bar's claims for contribution and indemnification. Skinner's Bar concedes that its claims for contribution are barred by § 15–108. Skinner's Bar asserts, however, that § 15–108 defines and limits only the right to contribution; it has no bearing on its claim to indemnity.

It is well-settled that an "indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them." *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 24, 484 N.E.2d 1354, 1356, 494 N.Y.S.2d 851, 853 (1985) (citation omitted). The New York Court of Appeals has emphasized that contribution and indemnity are fundamentally different claims:

> The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution.... The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial reimbursement is sought.

*Orsini v. Kugel,* 9 F.3d 1042, 1048–49 (2d Cir.1993) (citing *McDermott v. City of New York,* 50 N.Y.2d 211, 216, 406 N.E.2d 460, 462, 428 N.Y.S.2d 643, 646 (1980) (citations and internal quotes omitted)).

Skinner's Bar argues, however, that indemnification claims may be ground in the common law, as well as in contract. It cites *Mas v. Two Bridges Associates,* 75 N.Y.2d 680, 554 N.E.2d 1257, 555 N.Y.S.2d 669 (1990), in support of its argument that the critical issue for indemnity claims is not the existence of a contract but rather determining who in fairness was responsible for the accident.

Although *Mas* held that "commonly the indemnity obligation is implied, ... based upon the law's notion of what is fair and proper between the parties," *Mas,* 555 N.Y.S.2d at 674, 554 N.E.2d at 1262, *Mas* did not abrogate the rule that a claim for indemnification must be premised upon an express or implied duty owed the indemnitee by the indemnitor. In *Mas,* the plaintiff was injured when an elevator malfunctioned. Although there was no express provision indemnifying the landlord, the elevator maintenance company's contract with the landlord to maintain the elevator supplied the duty from which indemnity could be implied.

■ In this case, no contract exists, implied or otherwise, between Skinner's Bar and Shinnick and Downey. Shinnick and Downey owe no duty of indemnification to Skinner's Bar. Skinner's Bar's third-party claim arose out of its liability as an alleged joint tortfeasor and is for contribution alone, regardless of how it is characterized in the pleadings. See *Rosado,* 494 N.Y.S.2d at 854, 484 N.E.2d at 1357 ("The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification.") (citation omitted). Because Skinner's Bar's claim for contribution is barred by § 15–108, and because Shinnick and Downey owe no duty of indemnification, their motion for summary judgment dismissing the claims against them is granted.

### III. Augie's Bar's Motion for Summary Judgment

On November 29, 1994, Conrad executed a stipulation of settlement and discontinuance with prejudice as to Augie's Bar. Augie's Bar remains a party to the action, however, because Skinner's Bar cross-claimed against it for contribution and indemnification. Au-

or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor ... relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

gie's Bar has moved for summary judgment dismissing these claims against it.

 Skinner's Bar's claim for indemnification is dismissed for the reasons discussed above; no contract exists, implied or otherwise, between the parties. Skinner's Bar's counter-claims against Augie's Bar arose out of its alleged liability as a joint tortfeasor and is for contribution alone.

With regard to the claim for contribution, Augie's Bar first argues that the stipulation of discontinuance operates as a release, which under § 15–108 bars claims for contribution from alleged joint tortfeasors. Without citing any legal authority, Skinner's Bar argues in opposition that § 15–108 refers only to "releases," not stipulations of discontinuance.

 Courts, however, have recognized that stipulations of discontinuance may fall within the purview of § 15–108. See, e.g., *Apple v. Jewish Hospital and Medical Center,* 829 F.2d 326, 331 (2d Cir.1987) (permitting nonsettling defendant to set-off equitable share of voluntarily discontinued defendant's liability, pursuant to § 15–108); *Killeen v. Reinhardt,* 419 N.Y.S.2d 175, 71 A.D.2d 851 (2d Dept.1979) ("fact that plaintiff discontinued his claim against [defendant] without monetary consideration does not, under the circumstances at bar, take the matter out of the purview of section 15–108 of the General Obligations Law.").

Even if the stipulation of discontinuance did not serve as a release for the purposes of § 15–108, summary judgment on the contribution claim would be appropriate because Skinner's Bar has failed to demonstrate liability on the part of Augie's Bar under the Dram Shop Act. There is no evidence that Downey was visibly intoxicated while at Augie's Bar. Skinner's Bar's expert contends that Downey did not exhibit signs of intoxication at any time before the accident at approximately 2:15 am, over three hours after he had left Augie's Bar. Conrad's expert witness contends that Downey would not have exhibited signs of intoxication until after 1:00 am, over two hours after leaving Augie's Bar.

Augie's Bar's motion for summary judgment dismissing the counterclaims against it is granted.

IV. *Skinner's Bar's Motion for Summary Judgment*

a. *The Law of the Case Doctrine*

Conrad opposes reconsideration of Skinner's Bar's motion for summary judgment because, it argues, Skinner's Bar has not demonstrated compelling or cogent reasons for such reconsideration; Conrad asserts that Skinner's Bar was merely dissatisfied with the previous decision and is using the opportunity afforded by reassignment of the case to engage in judge-shopping. See *Dictograph Prods. v. Sonotone Corp.,* 230 F.2d 131, 135 (2d Cir.1956) ("shop[ping] about in the hope of finding a judge more favorably disposed . . . [is] a sufficient reason for treating the first ruling as conclusive.").

 Although the "law of the case" doctrine discourages the reconsideration of matters previously decided "absent 'cogent' or 'compelling' reasons," *Baden v. Koch,* 799 F.2d 825, 828 (2d Cir.1986), the doctrine is discretionary and "does not constitute a limitation on the court's power." *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982). The doctrine is not an inviolate rule of law but "merely expresses the general practice of refusing to reopen what has been decided." *Slotkin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 312 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); see also *Dictograph,* 230 F.2d at 135.

"It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge." *In re United States,* 733 F.2d 10, 13 (2d Cir.1984). "Judges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose. The only limitation placed upon a trial judge's decision to disregard a previous ruling by a judge of coordinate jurisdiction is that prejudice not ensue to the party seeking the benefit of the doctrine. . . . In this con-

text, prejudice does not mean the harm which results from a failure to apply the doctrine; rather, it refers to a lack of sufficiency of notice and an opportunity to prepare armed with the knowledge that one judge is disregarding the ruling of another." *Birney,* 686 F.2d at 107 (citations omitted).

■ Conrad has been given sufficient "notice and an opportunity to prepare armed with the knowledge" that this Court may disregard the previous ruling. Reconsideration of the issues raised by Skinner's Bar will save the Court and the parties the time and expense of litigating purely legal claims that, even in the event of trial, could not be submitted to a jury.

### b. *The Common–Law Negligence Claims*

Three of the four claims asserted by Conrad in her complaint are based on negligence theories. Count I is a wrongful death claim. New York's wrongful death statute, Estates, Powers and Trusts Law § 5–4.1, creates a cause of action for wrongful death in the personal representative of a decedent. It is actionable, however, only if the decedent would himself have had a cause of action against the defendant "for such wrongful conduct if death had not ensued." EPTL § 5–4.1. Count II seeks recovery for the pain and suffering of the decedent as a result of the negligence of the defendants. Count III seeks recovery for the loss of services, care, comfort, guidance and support of the decedent by reason of the defendants' negligence.

Skinner's Bar argues that these three counts should be dismissed for failure to state a claim. Skinner's Bar asserts that under the common law, one who provides intoxicating liquor is not liable for injuries caused by the inebriate which occur off the premises of the liquor establishment. The Dram Shop Act created an exception to the common-law rule, and thus, according to Skinner's Bar, provides the only route to recovery for Conrad. Skinner's Bar does not argue that the Dram Shop Act bars a wrongful death claim or any other common law remedy. Rather, Skinner's Bar argues that the decedent, had he lived, would not have had a common law negligence claim against it

(for injuries sustained in an accident that occurred off its premises) upon which to base a wrongful death action.

In opposition, Conrad argues that New York law recognizes, or at least should recognize, a negligence cause of action against one who provides intoxicating liquor for injuries caused by the inebriate.

■ Recent New York appellate division cases support Skinner's Bar's motion to dismiss the common-law negligence claims. "[C]ourts have declined to impose common-law negligence liability upon a tavern owner for the conduct of voluntarily intoxicated patrons where, as here, the injury takes place at a location some distance from the tavern owner's establishment and outside the area controlled by that person." *Delamater v. Kimmerle,* 484 N.Y.S.2d 213, 215, 104 A.D.2d 242 (3d Dept.1984). See also *Etu v. Cumberland Farms, Inc.,* 538 N.Y.S.2d 657, 659, 148 A.D.2d 821, 823 (3d Dept.1989) ("Supreme Court did err ... in denying [defendant's] motion to dismiss the causes of action predicated upon common-law negligence, since the accident occurred outside the area of [defendant's] control, several hours after the sale in question.").

Moreover, in at least two cases, a plaintiff's negligence claims have been dismissed on facts substantially similar to those of this case. In both cases, the plaintiff was a third-party, i.e., not the inebriate, and the accident occurred off the premises of the liquor establishment. See *Wright v. Sunset,* 457 N.Y.S.2d 606, 607, 91 A.D.2d 701, 701 (3d Dept.1982) ("Any duty under [a common-law negligence] theory to control the conduct of patrons in consuming alcoholic beverages does not extend beyond the area where supervision and control may reasonably be exercised."); *Besner v. Bucci,* 523 N.Y.S.2d 300, 301, 135 A.D.2d 1081 (3d Dept.1987) ("Common-law liability is not to be imposed upon a tavern owner for conduct of an intoxicated patron when the injury takes place at a location some distance from the owner's establishment.").

In *D'Amico v. Christie,* 71 N.Y.2d 76, 518 N.E.2d 896, 524 N.Y.S.2d 1 (1987), the New York Court of Appeals appears to have en-

dorsed the position of the appellate division, although the facts admittedly differ from the facts of this case. In *D'Amico*, the Court reviewed the principles surrounding the liability of liquor providers to third parties injured by an inebriate:

> Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property. In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control. Applying this rationale, lower courts have recognized that a landowner may have responsibility for injuries caused by an intoxicated guest. Significantly, however, these decisions have uniformly acknowledged that liability may be imposed only for injuries that occurred on defendant's property, or in an area under defendant's control, where defendant had the opportunity to supervise the intoxicated guest.

*D'Amico*, 524 N.Y.S.2d at 5, 518 N.E.2d at 900 (citations omitted).

Conrad cites *Ross v. Roberta Bar and Grill, Inc.*, 441 N.Y.S.2d 23, 83 A.D.2d 550 (2d Dept.1981) and *Morrissey v. Sheedy*, 272 N.Y.S.2d 430, 26 A.D.2d 683 (2d Dept.1966) in support of its argument that New York recognizes a negligence cause of action against the liquor provider. In both *Morrissey* and *Ross*, however, the plaintiff was assaulted by an inebriated patron while in the defendant's tavern. Skinner's Bar does not dispute that a negligence cause of action is available on such facts. Rather, it correctly asserts that a liquor establishment may not be held negligent for conduct that occurs off its premises.

Conrad's second argument is that even if a negligence claim against a liquor establishment has not been recognized previously, it should be, provided the elements of negligence—breach of a duty and proximate cause—are present. Three New York supreme court cases from the 1960s and 1970s appear to support this argument. See *Berkeley v. Park*, 262 N.Y.S.2d 290, 47 Misc.2d 381 (Sup.Ct.1965) (holding that if the plaintiff could demonstrate that selling or furnishing alcohol to an adult who voluntarily became intoxicated was the proximate cause of the injuries sustained by a third party, a cause of action in negligence should be available); *Vadasy v. Bill Feigel's Tavern, Inc.*, 391 N.Y.S.2d 32, 34, 88 Misc.2d 614, 616 (Sup.Ct.1973) ("Although Common Law Negligence is available in some instances, it would be available to third party not to the consumer of the alcohol."); *Vale v. Yawarski*, 359 N.Y.S.2d 968, 971 n. 4, 79 Misc.2d 320, 322 n. 4 (Sup.Ct.1974) ("The court in *Berkeley* made it clear that it was the special duty of an innkeeper to the general public which formed the basis for [a common-law negligence] cause of action.").

In light of the more recent appellate division cases, *Delamater, Etu, Wright*, and *Besner*, which explicitly hold that common law liability is not to be imposed upon a tavern owner for the conduct of an intoxicated patron when the injury takes place off the premises, the Court declines to recognize Conrad's negligence claims. Skinner's Bar's motion for summary judgment to dismiss the negligence claims is granted.[2]

---

**2.** Having granted Skinner's Bar's motion to dismiss the negligence claims, this Court need not consider Skinner's Bar's motion to dismiss the pain and suffering claim in particular. The Court notes, however, that in order to recover for post-accident pain and suffering, a decedent must have demonstrated some level of cognitive awareness. See *Martin v. Reedy*, 606 N.Y.S.2d 455, 457, 194 A.D.2d 255, 259 (A.D. 3 Dept. 1994). Although Conrad argues that the decedent may have experienced post-accident pain and suffering, there is no evidence to suggest that the decedent ever regained consciousness after the accident. The Certificate of Death prepared by the Town of Poughkeepsie states that the cause of death was "multiple skull fractures" and that the interval between onset and death was "immediate." In his deposition testimony, Bohler states that he could not find the decedent's pulse seconds after impact. The Pre-hospital Care Report prepared by the medics attending the accident scene indicates that the decedent exhibited no vital signs. Upon arrival at the hospital, the decedent was pronounced dead. "Absent contradictory proof, such as an expert's opinion that decedent survived the accident based upon the nature of his injuries, plaintiff's causes of action [for pain and suffering] [a]re properly dismissed." *Martin*, 606 N.Y.S.2d at 457.

### c. *The Dram Shop Claims*

Skinner's Bar argues that because there is no evidence that Downey was visibly intoxicated when served liquor at Skinner's Bar, summary judgment on the Dram Shop claims should be granted. The bartender, Bohler, and O'Shea have all testified that Downey was not loud, boisterous, argumentative, nor slurring his speech. Courts have held that "[i]t is incumbent upon a plaintiff who charges a violation of the Dram Shop Act to offer evidence that the party to whom the liquor was sold acted or appeared to be intoxicated at the time of the sale." *Nehme v. Joseph*, 554 N.Y.S.2d 642, 643, 160 A.D.2d 915, 916 (2d Dept.1990); see also *Senn v. Scudieri*, 567 N.Y.S.2d 665, 165 A.D.2d 346 (1st Dept.1991).

In opposition, Conrad argues that (1) Bohler and O'Shea were in no condition themselves to make observations as to Downey's state of intoxication, (2) the police at the scene of the accident have stated that Downey's eyes were bloodshot and that he failed several sobriety tests, and (3) Conrad's expert contends that Downey would have been showing signs of intoxication before leaving Skinner's Bar.

 Because whether Downey was visibly intoxicated when served alcohol at Skinner's Bar is a genuine issue of material fact for which there is some evidence on both sides, Skinner's Bar's motion for summary judgment on the Dram Shop claims is denied.

### d. *The Purchase-of-Alcohol Defense*

 Skinner's Bar argues that the decedent's alleged purchase of alcohol for the inebriate (the driver Downey) bars the Estate's Dram Shop Claim. Under New York law, a person who actively causes or procures the intoxication of the person responsible for the accident may not recover under the Dram Shop Act. See *Mitchell v. Shoals*, 19 N.Y.2d 338, 341, 227 N.E.2d 21, 23, 280 N.Y.S.2d 113, 116 (1967); *Powers v. Niagara Mohawk Power Corporation*, 516 N.Y.S.2d 811, 129 A.D.2d 37 (A.D. 3 Dept.1987). The injured person, however, "must play a much more affirmative role than that of drinking companion to the one who injures him before he may be denied recovery against the bartender or tavern keeper who served them." *Mitchell*, 280 N.Y.S.2d at 116.

 Skinner's Bar relies on very ambiguous deposition testimony, which even if it were conclusive would establish only that the decedent, in turn, bought rounds of drinks. Because this evidence does not even establish that the decedent purchased alcohol for the inebriate, not to mention *caused* his intoxication by playing a much more affirmative role than a drinking companion, Skinner's Bar's motion for summary judgment to dismiss the Estate's Dram Shop claim is denied.

### e. *Offsetting Recovery by Conrad in her Individual Capacity*

 Section 15–108(a) of the General Obligations Law provides that when a release is given to one joint tortfeasor for the same injury or same wrongful death, it reduces the claim of the releasor against the other tortfeasors. Conrad expressly executed the release in her capacity as Administratrix. Citing *Casey v. State of New York*, 507 N.Y.S.2d 159, 119 A.D.2d 363 (2d Dept.1986) and *United States v. Zan Machine Company, Inc.*, 803 F.Supp. 620 (E.D.N.Y.1992), Skinner's Bar contends, however, that the $100,000 paid to the Estate by Shinnick in exchange for the release of claims should be used to offset any recovery by Conrad individually.[3]

In addition, the Court notes that courts have held that where there is no evidence that the decedent was aware of impending death causing him to suffer any pre-impact terror, the estate cannot recover for the decedent's pain and suffering. See *Anderson v. Rowe*, 425 N.Y.S.2d 180, 73 A.D.2d 1030 (A.D. 4 Dept.1980); *Martin*, 606 N.Y.S.2d at 457. Conrad has not offered any evidence that the decedent was aware of impending death. There is no evidence that anyone screamed or made any noise as the car crashed down the embankment. Conrad's claim for pain and suffering is based on pure speculation that a passenger in a car that fishtailed and crashed down a 50–foot embankment felt fear.

3. Under the Dram Shop Act, the recovery of damages is more circumscribed than on a common-law negligence or wrongful death claim. The Dram Shop Act permits recovery by "any person who shall be injured in person, property, means of support, or otherwise by ... reason of the intoxication of any person." General Obligations Law, § 11–101. Thus, under the Dram

In *Casey,* the claimants' decedent was a passenger in a two-car accident. Their claim included separate causes of action for conscious pain and suffering and for wrongful death against three tortfeasors. The claimants settled with two of the tortfeasors and allocated the greater portion of the total proceeds to the conscious pain and suffering action, despite the dubious nature of that claim; the decedent had never regained consciousness between the accident and the date of death. The third tortfeasor challenged the apportionment. The Court held the self-created apportionment proffered by the claimants was not binding on the trial court because allocating the greater portion of the proceeds to a potentially nonexistent conscious pain and suffering cause of action could improperly minimize the setoff of the wrongful death action. The Court further held that the apportionment of the two causes of action for setoff purposes must be made following trial on the evidence adduced at trial by the trier of fact.

In *Zan Machine Company,* the Court similarly held that "when a plaintiff settles with one defendant, a nonsettling co-defendant is entitled to a credit of the settlement amount against any judgment the plaintiff obtains against the nonsettling co-defendant as long as both the settlement and judgment represent common damages." 803 F.Supp. at 623.

In opposition, Conrad argues that because the release was given to Shinnick and Downey by the Estate only, she has not released her individual claim and this Court cannot rewrite the release to add additional parties.

Neither *Casey* nor *Zan Machine Company* specifically address the issue raised in this case. *Casey* cautioned against permitting double recoveries, i.e., allowing a litigant to allocate proceeds to a non-existent claim in order to minimize the setoff against a viable claim. Here, however, the settlement amount was not apportioned between claims of a single plaintiff. The Estate released Shinnick and Downey from all of its claims. Based on the record, there is no reason to suspect that in doing so the Estate did not settle a viable and valuable claim for wrongful death against Shinnick and Downey. Nor is there reason to suspect that the Estate's wrongful death claim against Shinnick and Downey was not worth $100,000. Thus, permitting Skinner's Bar to setoff that amount against any recovery by Conrad individually would run the risk of depriving Conrad individually of full recovery on her claim.

Moreover, the settlement and any recovery by Conrad individually do not appear to represent "common damages" for the "same injury." Under the Dram Shop Act, Conrad has an independent and separate claim for her injury of loss of support from that of the Estate's injury of death. Even if the Estate's claim were barred, for example, because the decedent had caused the intoxication of the inebriate, Conrad individually would still have a claim under the Dram Shop Act for her injury of lost support. Because § 15–108 reduces the claim of the releasor against a joint tortfeasor only for the "same injury," Skinner's Bar's motion to offset the amount of the release against any recovery obtained by Conrad individually is denied without prejudice and with leave to renew following a verdict and upon the evidence adduced at trial.

In conclusion, the Third–Party Defendants' motion for summary judgment dismissing all claims against them is granted. Augie's Bar's motion for summary judgment dismissing all claims against it is granted. Skinner's Bar's motion for summary judgment dismissing the negligence claims is granted, but is denied in all other respects.

SO ORDERED.

---

Shop Act, Conrad's individual claim for damages will be limited to "loss of support." Damages for loss of consortium and its variants, i.e. maintenance, care, nurture, love, guidance, training and education, whether economic or non-economic, are not recoverable under the Dram Shop Act. See *Valicenti v. Valenze,* 68 N.Y.2d 826, 499 N.E.2d 870, 507 N.Y.S.2d 616 (Ct.App.1986).