[908 NYS2d 527]

Felix Sanabria, Claimant, v State of New York, Defendant.[1]
(Claim No. 114417.)

Court of Claims, August 3, 2010

<hr>

**1.** The caption has been amended sua sponte to reflect the State of New York as the only proper defendant.

APPEARANCES OF COUNSEL

*Arnold J. Levine* for claimant. *Andrew M. Cuomo, Attorney General (Thomas R. Monjeau* of counsel), for defendant.

## OPINION OF THE COURT

W. Brooks DeBow, J.

Claimant seeks to recover damages for 91 days of wrongful imprisonment resulting from the Division of Parole's alleged miscalculation of his release date. The plenary trial of this claim was conducted on March 3, 2010 in Albany, New York. Claimant presented his testimony; defendant called no witnesses. Claimant offered two documents into evidence and defendant offered one document, all three of which were received into evidence. After listening to claimant's testimony and observing his demeanor while testifying, and upon consideration of that evidence and all of the other evidence received at trial and the applicable law, the court makes the following findings of fact and conclusions of law.

## Liability

Claimant was arrested on May 8, 1999 for the crime of criminal possession of a controlled substance (CPCS) in the third degree with intent to sell, a class B felony. On August 18, 1999, claimant pleaded guilty to attempted CPCS with intent to sell, a class C felony, in satisfaction of the May 8, 1999 charge, and was sentenced to an indeterminate term of imprisonment of 3 to 6 years. At the time of his arrest, conviction and subsequent incarceration, claimant was under the supervision of the Division of Parole, having been released from prison on a prior indeterminate sentence of 3 to 6 years for a conviction upon plea for attempted criminal sale of a controlled substance (CSCS), a class C felony.[2]

Claimant was released from prison to parole supervision on May 21, 2003. On February 15, 2005, claimant was arrested for

---

2. Claimant had been convicted of 10 criminal offenses preceding his 1999 arrest, dating back to 1979. All but three of the convictions are for drug-related offenses ranging from class B misdemeanors to class C felonies. The remaining three convictions were for petit larceny, unauthorized use of a motor vehicle and criminal trespass.

the crime of CPCS in the third degree with intent to sell, a class B felony. On February 18, 2005, claimant pleaded guilty to CPCS in the seventh degree, a class A misdemeanor, and was sentenced to time served, with his parole status remaining unchanged. On November 29, 2005, claimant was arrested for the crime of CPCS in the seventh degree, a class A misdemeanor, was convicted of that charge upon his guilty plea, and was sentenced to a term of incarceration of 90 days. On March 23, 2006, claimant was received by the Department of Correctional Services (DOCS) for violating the conditions of his parole, and was thereafter released to parole supervision on July 6, 2006.

The court received into evidence claimant's notice to admit, dated June 5, 2009 (claimant's exhibit 1), and defendant's response to claimant's notice to admit (claimant's exhibit 2). In that response, defendant admitted that: (1) claimant was confined from April 6, 2006 to July 6, 2006 by DOCS; (2) claimant was entitled to be released from confinement on April 6, 2006 but was not released from confinement until July 6, 2006; (3) defendant intended to confine claimant from April 6, 2006 to July 6, 2006 under a mistake of fact; and (4) the Division of Parole was required to calculate a release date of April 6, 2006 for claimant and communicate that to DOCS, but it did not accurately calculate claimant's release date and communicated the incorrect release date of July 6, 2006 to DOCS. Claimant testified that he was aware of his confinement between April 6, 2006 and July 6, 2006 and did not consent to the confinement.

Claimant was released to parole supervision on July 6, 2006 to the residence he shared with his common-law wife of 27 years, Yvette Nazario.[3] Among the general conditions of claimant's release (see defendant's exhibit A, Certificate of Release to Parole Supervision, dated July 6, 2006), claimant: (1) was required to report to his parole officer; (2) was prohibited from leaving New York State without permission; (3) was required to permit his parole officer to visit him at his residence and/or place of employment and permit the search of his person, residence or

---

3. There was no proof as to how claimant and Ms. Nazario attained that marital status—"New York does not itself recognize common-law marriages . . . [but] a common-law marriage contracted in a sister State will be recognized as valid here if it is valid where contracted" (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980] [citations omitted]). Without making a determination of the validity of claimant's marital status, and in accordance with claimant's testimony, this decision shall refer to Ms. Nazario as claimant's wife.

property; (4) was prohibited from being in the company of any person he knew to have a criminal record; and (5) could not own, possess or purchase a shotgun, rifle or firearm. Further, claimant was specifically: (a) required to provide a DNA sample for the New York State DNA Index; (b) required to submit to drug testing; (c) prohibited from consuming alcoholic beverages and frequenting establishments where alcohol was served as its main business without permission; and (d) required to abide by a curfew set by his parole officer.

▮ Claimant contends that he was wrongfully imprisoned for 91 days, because he should have been released by DOCS to parole supervision on April 6, 2006 but remained incarcerated until July 6, 2006. The elements of a cause of action for unlawful confinement are "that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged" (*Martinez v City of Schenectady*, 97 NY2d 78, 85 [2001]; *Broughton v State of New York*, 37 NY2d 451, 456 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]). The first three elements of this cause of action are undisputedly and clearly established by defendant's responses to claimant's notice to admit and claimant's credible testimony that he was aware of and did not consent to the confinement. Therefore, defendant's liability turns upon whether claimant's confinement during the 91 days was privileged.

Defendant maintains that claimant's confinement was privileged because he was arrested and confined pursuant to a facially valid order issued by a court with proper jurisdiction directing confinement. Defendant also argues that claimant's confinement was privileged as he was also held on a parole warrant and a proper and valid sentence and commitment order issued on March 23, 2006. The court, however, cannot properly consider the issue of whether claimant was held pursuant to a facially valid court order, a Division of Parole warrant, or a sentence and commitment order inasmuch as no such documents were proffered by defendant. Because those instruments of legal process are not in evidence, the court cannot ascertain the facial validity of them (*see Holmberg v County of Albany*, 291 AD2d 610, 612-613 [3d Dept 2002]; *Nastasi v State of New York*, 275 App Div 524, 526 [3d Dept 1949], *affd* 300 NY 473 [1949]).

In the absence of evidence of legal process that would authorize DOCS to hold claimant past April 6, 2006, the burden rests

upon defendant—the party charged with the tort of wrongful confinement—to prove that the confinement was otherwise privileged (*see Broughton* at 458; *Hollender v Trump Vil. Coop.*, 58 NY2d 420, 425 [1983]; *Gonzalez v State of New York*, 110 AD2d 810, 812 [1985], *appeal dismissed* 67 NY2d 647 [1986]). Other than factually unsupported statements of defense counsel, there is no evidence in the record of any legal authority that would authorize defendant to confine claimant during that period. Moreover, defendant's admissions in response to claimant's notice to admit that claimant was entitled to be released from confinement on April 6, 2006 and that the Division of Parole inaccurately calculated claimant's release date contradict defense counsel's argument that claimant's confinement was privileged. Because defendant did not demonstrate that claimant's confinement was pursuant to a valid order or warrant, or that said confinement was otherwise privileged, the court concludes that claimant was unlawfully confined for a period of 91 days, and that defendant is liable to claimant.

### Damages

■ All of the evidence pertinent to claimant's damages was presented in claimant's testimony, as follows. During claimant's incarceration from April 6, 2006 through July 6, 2006, he was in four different state correctional facilities[4] and he was aware that he was supposed to have been released from DOCS custody to parole supervision on April 6, 2006.[5] As compared to prior periods of incarceration when claimant knew that he was serving "time he had to do,"[6] claimant testified that it was more difficult emotionally for him to be incarcerated because he was doing time he was not supposed to do. Claimant testified that he was harassed by other inmates who knew that he was supposed to be released because they knew that he could not defend himself for fear of incurring a disciplinary infraction that could result in his continued incarceration. According to claimant, other inmates threw water and urine in his face and he had to "deal with it" because he did not want to get a disciplinary "ticket."

---

4. Claimant was incarcerated at Watertown Correctional Facility (CF) on April 6, 2006 and was released from Queensboro CF on July 6, 2006. Claimant also spent time at Mid-State CF and Governeur CF.

5. Claimant testified that he was supposed to be released from DOCS custody on April 5, 2006, but the credible evidence indicates that he was entitled to be released on April 6, 2006.

6. All quotations in this decision are to the court's trial notes or the digital audio recording of the trial, unless otherwise indicated.

Claimant testified that he received no visits from family during the 91 days. He just received letters, although he did speak on the phone with his wife, who was upset that he was not able to be home with her, which in turn upset him. During the period of his unlawful confinement, he was unable to live with and take care of his wife and their 36-year-old daughter, both of whom have disabling conditions. In particular, his wife has multiple sclerosis and has a very difficult time taking care of herself, and their daughter, who resides with them, has mental retardation. Claimant was the primary care giver for his wife and daughter and he felt emotional pain from his inability to take care of his family during the period of his wrongful incarceration. Claimant blames himself for his son leaving school to help take care of claimant's wife and daughter, although it was unclear from his testimony whether his son left school during the 91 days of his incarceration or during a prior period of incarceration. Claimant did, however, testify that his sister-in-law moved into his residence on April 20, 2006 to help care for claimant's wife and daughter. Claimant testified that he was unable to attend the funerals of his aunt and uncle who passed away on June 5 and June 6, 2006, and when pressed about how the inability to attend the funerals affected him, claimant grew visibly upset and refused to talk about it. Claimant testified that he suffered emotionally while incarcerated during the 91 days of his unlawful confinement, and that he had difficulty sleeping and eating and lost 50 pounds during his confinement.

"As a general rule, the measure of damages for [unlawful confinement] is such a sum as will fairly and reasonably compensate the injured person for injuries caused by the defendant's wrongful act" (*Hallenbeck v City of Albany*, 99 AD2d 639, 640 [3d Dept 1984]). Such damages may include noneconomic damages for mental anguish and economic damages for loss of earnings (2 NY PJI2d 3:5.1, III [A], at 48 [2010]), as well as noneconomic damages for the loss of liberty during a period of unlawful confinement (*see Emanuele v State of New York*, 43 Misc 2d 135 [Ct Cl 1964]; *see generally Gardner v Federated Dept. Stores, Inc.*, 907 F2d 1348 [2d Cir 1990]; *Martinez v Port Auth. of N.Y. & N.J.*, 2005 WL 2143333, 2005 US Dist LEXIS 19141 [SD NY 2005], *affd* 445 F3d 158 [2d Cir 2006]). "The mental anguish suffered by an inmate while he is in prison encompasses his discomfort, fear, lack of privacy and degradation" (*Baba-Ali v State of New York*, 24 Misc 3d 576, 581-582 [Ct Cl

2009]). Damages attributable to loss of liberty include damages for the loss of the fundamental right to be free, lost opportunities to engage in everyday activities while confined, and for the mental anguish that accompanies the loss of liberty (*see e.g. Baba-Ali v State of New York, supra*; *Kinge v State of New York*, Ct Cl, June 23, 2009, Midey, J., claim No. 88273, UID No. 2009-009-201). The court will make one finding for noneconomic damages that will encompass damages for mental anguish and loss of liberty (*see Jackson v State of New York*, Ct Cl, Dec. 21, 2009, DeBow, J., claim No. 114376, UID No. 2009-038-105).

Claimant seeks damages for the mental anguish suffered during the 91 days of his confinement.[7] In this regard, the court found claimant's testimony to be less than compelling. While it is clear that claimant suffered some degree of mental anguish while confined, claimant's testimony and demeanor while on the stand left the court with the impression that the impact of the incarceration on his mental health and well-being was not as extensive as he would have the court believe. In particular, claimant's demeanor during his testimony about the sleepless nights and weight loss he experienced in prison rendered that testimony unpersuasive, and the court is unconvinced that he suffered any physical manifestations as the result of the mental anguish he endured. Other than his brief testimony about harassment by other inmates, claimant offered no evidence of "discomfort, fear, lack of privacy and degradation" (*Baba-Ali v State of New York* at 582) suffered during his confinement. Moreover, the court notes, the fact that claimant has previously served extensive periods of incarceration—as compared to a claimant who has never been incarcerated—is properly considered on the issue of claimed mental anguish (*see e.g. Johnson v State of New York*, 155 Misc 2d 537, 541 [Ct Cl 1992]). While the court credits claimant's testimony that he suffered emotional pain due to being away from his family during the 91 days of his confinement, and acknowledges that such pain may have been enhanced by his inability to be with and assist his wife and daughter, the court, in considering the impact of this confinement on claimant's mental state, cannot ignore the significant amount of time that claimant has previously spent apart from his family while incarcerated for prior crimes. The court

---

**7.** Claimant offered no proof of future noneconomic damages, and while claimant testified that he occasionally worked as an automobile mechanic or plumber, he offered insufficient evidence of economic damages to support any award therefor.

finds that the mental anguish proximately caused by claimant's wrongful confinement was modest.

The injuries resulting from claimant's loss of liberty, however, appear much more genuine. Claimant was confined for 91 days to state correctional facilities in which his freedom was manifestly limited, and he was unable to engage in many of the everyday activities that nonincarcerated individuals enjoy. Although claimant's liberty would have been somewhat restrained by the conditions of his parole, he was wrongfully separated from his family and denied the comforts of being in his own home, and unable to enjoy the freedoms that remained unrestricted by the conditions of his parole. Considering claimant's testimony, his demeanor while testifying, and his prior history of incarceration, the court finds that claimant experienced a manifest and profound loss of liberty during his confinement, as would anyone else so situated.

Turning to the measurement of compensation for claimant's past noneconomic damages, "[t]he inherently factual finding of damages for [noneconomic injury] is generally 'left to a [factfinder's] common sense and judgment in light of its common knowledge and experience and with due regard to the evidence presented at trial, including the demeanor and testimony of all witnesses' " (*Apuzzo v Ferguson*, 20 AD3d 647, 648 [3d Dept 2005], quoting *Murphy v Lewry*, 235 AD2d 968, 969 [3d Dept 1997]). It is proper for a court to look at other similar cases to determine a reasonable award (*see e.g. Jones v State of New York*, Ct Cl, Feb. 27, 2008, Fitzpatrick, J., claim No. 105792, UID No. 2008-018-613).

Claimant urges the court to award $60,000 in compensatory damages, citing numerous awards in federal and state courts involving the false arrest or detention of individuals, as well as this court's decision in *Jackson v State of New York* (*supra*). Those cases, however, are factually distinguishable in several important respects. First, with the exception of the *Jackson* case noted above, there is no indication whether the claimants/plaintiffs in those cases had any prior involvement with the criminal justice system, and thus, the court infers that the unlawful arrest or detention in each of those cases was in all likelihood the claimants'/plaintiffs' first arrest or confinement. As noted above, claimant has an extensive criminal history. Moreover, it appears that in most of those cases the wrongful confinement was concomitant to a false arrest, whereas here, there is no dispute that claimant was properly arrested and

incarcerated in the first instance, and that his lawful confinement was unlawfully extended. Further, the claimants/plaintiffs in some of the cited cases, including *Jackson*, experienced a degree of psychological trauma, shame and humiliation that simply was not present in this claim. Thus, the court finds the cases cited by claimant to be of limited value in determining the damages to be awarded in this case.

Defendant argues that the court should be guided by the plethora of decisions in this court involving inmates whose unlawful confinement consisted of improper keeplock or confinement in a special housing unit (SHU). The court disagrees, and rejects defense counsel's argument that the loss of liberty that claimant endured when he was confined in prison and not released to parole supervision is comparable to the limited loss of liberty endured by inmates who are subjected to the increased restrictions of keeplock or SHU as compared to the lesser restrictions imposed on the general inmate population. Further, defense counsel is undoubtedly correct that an individual who is released to parole supervision has certain restrictions placed on his or her liberty and, indeed, claimant had such restrictions placed on him upon his release. However, despite such restrictions, when under parole supervision claimant resided outside the restrictive confines of prison, was free of the constant supervision of correctional staff, was with his family and friends, and fell asleep and woke up in his own bed. To compare claimant's loss of liberty to the increased restrictions of disciplinary housing is simply misguided, and thus, the court finds such cases offer little guidance in determining an award in this case.

Inasmuch as there is a paucity of cases involving comparably similar facts to the claim before the court, the court will rely upon its judgment in light of its common knowledge and experience and upon its consideration of the claimant's testimony in awarding damages to claimant as follows:

Past noneconomic damages: $20,000.

As noted supra, there is no claim for, or sufficient evidence of, economic damages and thus, no award is made therefor.

To the extent that claimant has paid a filing fee, it may be recoverable pursuant to Court of Claims Act § 11-a (2).

Any motions or objections not previously ruled upon are hereby denied.